137 P.3d 461

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Mark D. GRAGG, Defendant–Appellant.**

**No. 30850.**

Court of Appeals of Idaho.

Nov. 9, 2005.

Review Denied June 29, 2006.

Molly J. Huskey, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Robert K. Schwarz, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge.

In this appeal, Mark D. Gragg contends that the registration requirements of Idaho's Sexual Offender Registration Notification and Community Right–to–Know Act constitute retroactive punishment forbidden by the Ex Post Facto Clause of the Idaho Constitution.

**I.**

**FACTUAL BACKGROUND
AND PROCEDURE**

In 1989, in Bonner County, Idaho, Gragg was convicted of sexual abuse of a child under sixteen years of age, in violation of Idaho Code § 18–1506. After he completed the retained jurisdiction program, Gragg's sentence was suspended and he was placed on probation for five years. In 1993, the Idaho legislature enacted the Sexual Offender Registration Notification and Community Right–to–Know Act, I.C. §§ 18–8301 *et seq.*

(the Act). Gragg was discharged from probation in 1994.

Gragg registered as a sex offender while residing in Shoshone County. In 2003, Gragg moved to Kootenai County. While he provided notice of his intent to move to Kootenai County, he failed to fully complete registration requirements in his new county of residence on his arrival. As a result, Gragg was charged with failure to register as a sex offender, in violation of I.C. §§ 18–8307(1)(a), 18–8304(1)(c), 18–8311(1).[1]

Gragg moved to dismiss the information on the grounds that the registration requirements of the Act constitute retroactive punishment forbidden by the Ex Post Facto Clauses of the United States and Idaho Constitutions. The district court denied the motion. Gragg then entered a conditional plea of guilty, reserving the right to appeal the denial of his motion. This appeal followed.

## II.

## ANALYSIS

■ Gragg contends that the registration requirements of the Act constitute retroactive punishment forbidden by the Ex Post Facto Clause of the Idaho Constitution. In 1993, when the Idaho legislature adopted the first version of the Act, 1993 IDAHO SESS. LAWS ch. 155, § 1, pp. 391–94, Gragg was required to register as a sex offender because he was still on probation for the underlying sex offense. I.C. § 18–8304(1)(c).[2] Among other things,[3] the ex post facto doctrine prohibits a state from retroactively increasing the punishment for criminal acts. *Collins v. Youngblood,* 497 U.S. 37, 43, 110

S.Ct. 2715, 2719, 111 L.Ed.2d 30, 39 (1990); *State v. Lovelace,* 140 Idaho 73, 77, 90 P.3d 298, 302 (2004).

Article I, § 16 of the Idaho Constitution provides, in relevant part: "No ... ex post facto law ... shall ever be passed." Similarly, Article I, § 10, cl. 1, of the United States Constitution prohibits a state from passing an "ex post facto law."[4] Our state Supreme Court has recognized that the two constitutional provisions may not necessarily be of the same scope or subject to exactly the same interpretation. *See Quinlan v. Idaho Commission for Pardons and Parole,* 138 Idaho 726, 731, 69 P.3d 146, 151 (2003); *State v. Lindquist,* 99 Idaho 766, 769, 589 P.2d 101, 104 (1979). However, our appellate courts have traditionally cited the two constitutional provisions together, without recognition of the possibility of a difference in scope or analysis. *See Lovelace,* 140 Idaho at 77, 90 P.3d at 302; *State v. O'Neill,* 118 Idaho 244, 246–47, 796 P.2d 121, 123–24 (1990); *State v. Mee,* 102 Idaho 474, 483, 632 P.2d 663, 672 (1981), *overruled on other grounds by State v. Elisondo,* 114 Idaho 412, 757 P.2d 675 (1988); *State v. Byers,* 102 Idaho 159, 166, 627 P.2d 788, 795 (1981); *Wolf v. State,* 99 Idaho 476, 480, 583 P.2d 1011, 1015 (1978); *State v. Nickerson,* 132 Idaho 406, 411–12, 973 P.2d 758, 763–64 (Ct.App.1999); *LaFon v. State,* 119 Idaho 387, 389, 807 P.2d 66, 68 (Ct.App.1991); *Mellinger v. Idaho Department of Corrections,* 114 Idaho 494, 498, 757 P.2d 1213, 1217 (Ct.App.1988); *State v. Scroggie,* 110 Idaho 103, 113, 714 P.2d 72, 82 (Ct.App.1986); *Almada v. State,* 108 Idaho 221, 224, 697 P.2d 1235, 1238 (Ct.App.1985).

In this appeal, Gragg has made no argument that our state constitutional ex post

---

**1.** The acts in question occurred in 2003. Therefore the citations to Idaho Code sections referenced here are to those in effect at the time of the offense. We note that the Idaho legislature subsequently amended and reorganized I.C. §§ 18–8307 and 18–8304 in 2005. 2005 IDAHO SESS. LAWS ch. 233, § 2, pp. 710–14.

**2.** As of July 1, 2005, this specific provision is now codified at I.C. § 18–8304(1)(d).

**3.** Clarifying ex post facto analysis, the United States Supreme Court has stated:
It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act

previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*
*Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30, 39 (1990).

**4.** Article I, § 9, cl. 3, of the United States Constitution prohibits Congress from passing an "ex post facto law."

facto provision should be applied differently than the corresponding provision of the United States Constitution nor has he cited any factor supporting such a divergence. *See generally State v. Fees,* 140 Idaho 81, 88–89, 90 P.3d 306, 313–14 (2004); *State v. Schaffer,* 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App.1999). Therefore, we will assume for purposes of this appeal that the two constitution provisions are coextensive.

In *Ray v. State,* 133 Idaho 96, 982 P.2d 931 (1999), the Idaho Supreme Court held that the duty to register as a sex offender under the Act was a collateral, not a direct consequence of a guilty plea, and therefore the district court's failure to inform the defendant of this consequence at the time of the taking of the guilty plea did not invalidate the plea. *Id.* at 99–101, 982 P.2d at 934–36. As part of its analysis, the *Ray* Court discussed application of the ex post facto doctrine and concluded that "the fact of registration is not an additional punishment; it does not extend a sentence." *Id.* at 101, 982 P.2d at 936.

At the time of its decision in *Ray,* the Idaho Supreme Court was without the benefit of the United States Supreme Court decision in *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). The *Smith* Court framed the issue presented as follows:

> This is the first time we have considered a claim that a sex offender registration and notification law constitutes retroactive punishment forbidden by the *Ex Post Facto* Clause. The framework for our inquiry, however, is well established. We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " *Ibid.* (quoting *United States v. Ward,* 448 U.S. 242, 248–249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Because we "ordinarily defer to

the legislature's stated intent," *Hendricks, supra,* at 361, 117 S.Ct. 2072, " 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *Hudson v. United States,* 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (quoting *Ward, supra,* at 249, 100 S.Ct. 2636); see also *Hendricks, supra,* at 361, 117 S.Ct. 2072; *United States v. Ursery,* 518 U.S. 267, 290, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 365, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984).

*Id.* at 92, 123 S.Ct. at 1146-47, 155 L.Ed.2d at 176-77.

## A. The Intent of the Idaho Legislature was to Establish Civil, Regulatory Proceedings

Whether a statutory scheme is civil or criminal is a question of statutory construction. *Id.* at 92, 123 S.Ct. at 1146, 155 L.Ed.2d at 176. The statute's text and its structure are considered in determining the legislative objective. *Id.* The courts must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. *Id.* at 93, 123 S.Ct. at 1147, 155 L.Ed.2d at 177. Here, the legislature expressed the objective of the law in the statutory text itself. Idaho Code Section 18–8302 provides:

> The legislature finds that sexual offenders present a significant risk of reoffense and that efforts of law enforcement agencies to protect their communities, conduct investigations and quickly apprehend offenders who commit sexual offenses are impaired by the lack of current information available about individuals who have been convicted of sexual offenses who live within their jurisdiction. The legislature further finds that providing public access to certain information about convicted sexual offenders assists parents in the protection of their children. Such access further provides a means for organizations that work with youth or other vulnerable populations to prevent sexual offenders from threatening those served by the organizations. Final-

ly, public access assists the community in being observant of convicted sexual offenders in order to prevent them from recommitting sexual crimes. Therefore, this state's policy is to assist efforts of local law enforcement agencies to protect communities by requiring sexual offenders to register with local law enforcement agencies and to make certain information about sexual offenders available to the public as provided in this chapter.

In *Ray*, the Idaho Supreme Court relied significantly on the foregoing statutory provision in holding that "[t]he purpose of Idaho's registration statute is not punitive, but remedial." *Ray*, 133 Idaho at 100, 982 P.2d at 935. In *Smith*, the United States Supreme Court addressed an Alaska statute with a statement of intent similar to that provided in Idaho's statute. The *Smith* Court concluded:

> As we observed in *Hendricks*, where we examined an *ex post facto* challenge to a postincarceration confinement of sex offenders, an imposition of restrictive measures on sex offenders adjudged to be dangerous is "a legitimate nonpunitive governmental objective and has been historically so regarded." 521 U.S., at 363, 117 S.Ct. 2072. In this case, as in *Hendricks*, "[n]othing on the face of the statute suggests that the legislature sought to create anything other than a civil ... scheme designed to protect the public from harm." *Id.*, at 361, 117 S.Ct. 2072.

*Smith*, 538 U.S. at 93, 123 S.Ct. at 1147, 155 L.Ed.2d at 177.

The same holds true with regard to Idaho's Act. Gragg cites no factors, nor does this Court find any, altering the conclusion that a civil scheme was intended. While the Act is codified in Idaho's Criminal Code, "the location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one". *See Id.* at 94, 123 S.Ct. at 1148, 155 L.Ed.2d at 178.

**B. The Effects of the Act are not so Punitive as to Negate the Idaho Legislature's Intent to Create a Civil Scheme**

■ As the United States Supreme Court stated in *Smith*, "only the clearest proof will

suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 92, 123 S.Ct. at 1147, 155 L.Ed.2d at 176. The United States Supreme Court framed the inquiry into the effects of the Act as follows:

> In analyzing the effects of the Act we refer to the seven factors noted in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), as a useful framework. These factors, which migrated into our *ex post facto* case law from double jeopardy jurisprudence, have their earlier origins in cases under the Sixth and Eighth Amendments, as well as the Bill of Attainder and the *Ex Post Facto* Clauses. See *id.*, at 168–169, and nn. 22–28, 83 S.Ct. 554. Because the *Mendoza–Martinez* factors are designed to apply in various constitutional contexts, we have said they are "neither exhaustive nor dispositive," *United States v. Ward*, 448 U.S., at 249, 100 S.Ct. 2636; *89 Firearms*, 465 U.S., at 365, n. 7, 104 S.Ct. 1099, but are "useful guideposts," *Hudson*, 522 U.S., at 99, 118 S.Ct. 488. The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

*Smith*, 538 U.S. at 97, 123 S.Ct. at 1147, 155 L.Ed.2d at 179-80.

The Act provides for public access to certain registry information and permits that information to be posted on the Internet. *See* I.C. § 18–8323. Gragg argues that registering as a sex offender is humiliating and dissemination of that information over the Internet acts as a state mandated scarlet letter encouraging public shunning of individuals required to register. This alleged effect of sex offender registration does not lead to a conclusion that the Act creates a criminal penalty, however. In *Smith*, after discussing colonial punishments, including branding of criminals intended to inflict permanent stig-

mas casting the person out of the community, the Supreme Court concluded that sex offender registration and public dissemination of information was not the equivalent thereof. The Court stated:

> Any initial resemblance to early punishments is, however, misleading. Punishments such as whipping, pillory, and branding inflicted physical pain and staged a direct confrontation between the offender and the public. Even punishments that lacked the corporal component, such as public shaming, humiliation, and banishment, involved more than the dissemination of information. They either held the person up before his fellow citizens for face-to-face shaming or expelled him from the community. See Earle, supra, at 20, 35–36, 51–52; Massaro, supra, at 1912–1924; Semmes, *supra*, at 39–40; Blomberg Lucken, *supra*, at 30–31. By contrast, the stigma of Alaska's Megan's Law results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment.

*Smith* at 98, 123 S.Ct. at 1150, 155 L.Ed.2d at 180-81; *see also Ray*, 133 Idaho at 100, 982 P.2d at 935. The *Smith* Court further held that "[t]he fact that Alaska posts the information on the Internet does not alter our conclusion" in that "[t]he purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." *Smith* at 99, 123 S.Ct. at 1150, 155 L.Ed.2d at 181.

Gragg also argues that the effects of the Act are punitive because the public dissemination of sex offender registration information through the Act has rendered him unable to get a job. The *Smith* Court also rejected this argument, holding that "[l]andlords and employers could conduct background checks on the criminal records of prospective employees or tenants even with the Act not in place" and that the "information about the individual's conviction was already in the public domain." *Id.* at 100, 123 S.Ct. at 1151, 155 L.Ed.2d at 182. The Supreme Court further noted that any negative impact on the sex offender is not the result of registration, but instead flows from the fact of the conviction itself. *Id.* at 101, 123 S.Ct. at 1151, 155 L.Ed.2d at 182; *see also Ray*, 133 Idaho at 101, 982 P.2d at 936.

While there are differences between Alaska's Act and our own Act, none of these distinctions dictate a different result. In Alaska, most offenders must register for fifteen years. *Smith* at 90, 123 S.Ct. at 1145, 155 L.Ed.2d at 175. Conversely, Idaho's Act contains no such durational limitation. However, the severity of this requirement is lessened by a provision allowing the registrant to petition to be released from the requirement to register after the passage of ten years. I.C. § 18–8310; *Ray*, 133 Idaho at 101, 982 P.2d at 936.

Additionally, under Alaska's scheme, there is no in-person appearance requirement for updates to registration, *Smith*, 538 U.S. at 101, 123 S.Ct. at 1151, 155 L.Ed.2d at 182, whereas under the Idaho Act the registrant is required to appear in person. I.C. § 18–8307(5)(b). This is not, however, the equivalent of an affirmative disability to such a level as to constitute punishment.

Lastly, a registrant under Idaho's Act must pay a ten-dollar fee at the time of each registration. I.C. § 18–8307(2). Without citation to authority, Gragg argues that this fee constitutes a fine, i.e. a penalty that was not imposed when he was originally sentenced. We disagree. The fee may be waived upon a demonstration of indigency, I.C. § 18–8307(2), which factor militates against a conclusion that the registration fee is a mandatory penalty.

Gragg has not shown that the effects of sex offender registration under the Act are so punitive as to override the legislative intent to create a civil, regulatory scheme.

### III.

### CONCLUSION

We conclude that Idaho's Sexual Offender Registration Notification and Community

Right–to–Know Act, I.C. §§ 18–8301 *et seq.,* and its effects, are not punitive and therefore, do not violate the ex post facto prohibition of the Idaho Constitution, Article I, § 16. The district court's order denying the motion to dismiss is affirmed.

Chief Judge PERRY and Judge LANSING concur.

