IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 37758

STATE OF IDAHO,                                )
                                               )
      Plaintiff-Respondent,            )      **Boise, November 2011 Term**
                                               )
v.                                             )      **2011 Opinion No. 130**
                                               )
DANIEL JOHNSON,                                )      **Filed: December 8, 2011**
                                               )
      Defendant-Appellant.             )      **Stephen W. Kenyon, Clerk**
_____        )

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County.  Hon. Juneal C. Kerrick, District Judge.

The decision of the district court is <u>vacated</u>.

Ringert Law Chartered, Boise, for appellant.  David Hammerquist argued.

The Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.  Elizabeth A. Koeckeritz argued.

_____

J. JONES, Justice.

Daniel Johnson petitioned the district court for an exemption from sex offender registration requirements.  The district court determined that the 2009 amendments to the Idaho Sexual Offender Registration Notification and Community Right-to-Know Act (SORA) precluded such exemption and therefore denied his petition.  On appeal, Johnson argues that the district court's application of SORA was unconstitutional.  Because Johnson filed his petition in his already-dismissed criminal case, however, the district court lacked jurisdiction to consider the matter.  We therefore vacate the district court's decision.

## I.
## BACKGROUND

In 1998, Johnson pleaded guilty to sexual abuse of a child under the age of sixteen years, a violation of I.C. § 18-1506.  The State had charged Johnson with having "sexual contact with

1

R.M., a child under the age of sixteen, to wit: eleven (11) years old." Johnson entered his plea pursuant to an agreement made in accordance with Idaho Criminal Rule 11. Johnson's Rule 11 agreement provided: "The Defendant must comply with any legal requirements concerning registration as a sex offender under the laws of the [S]tate of Idaho or any other state where the Defendant resides."

After Johnson's plea, the district court withheld judgment and put Johnson on supervised probation. The court discharged Johnson from supervised probation in April 2001. In November 2002, the court set aside Johnson's plea, dismissed his case, and discharged his remaining term of probation.

In August 2009, Johnson filed a petition with the district court, seeking an exemption from his duty to register as a sex offender under SORA. Johnson filed his petition in his previously dismissed criminal case. The State opposed Johnson's petition, arguing that Johnson was convicted of an aggravated offense and was therefore precluded from petitioning for an exemption. After conducting a hearing and considering the parties' briefing on the matter, the district court determined that SORA, as amended in 2009, precluded an exemption. Johnson now appeals and raises four issues: (1) whether the 2009 SORA amendments run afoul of the U.S. Constitution's prohibition of *ex post facto* laws; (2) whether the 2009 SORA amendments, as applied to Johnson, constitute an unlawful impairment of his contract rights; (3) whether the 2009 SORA amendments violate Johnson's constitutional right to due process; and (4) whether the 2009 SORA amendments violate Johnson's rights under the Idaho Constitution.

## II.
## DISCUSSION

### A.    SORA and the U.S. Constitution.

Constitutional issues are questions of law over which this Court exercises free review. *Allied Bail Bonds, Inc. v. County of Kootenai*, 151 Idaho 405, __ , 258 P.3d 340, __ (2011). SORA requires anyone convicted of sexual abuse of a child under sixteen years old, a violation of I.C. § 18-1506, to have their name, address, physical description, and other personal information recorded in an electronic database. I.C. §§ 18-8304(1), -8305(1). For SORA's purposes, "[a] conviction . . . means that the person has pled guilty or has been found guilty, notwithstanding the form of the judgment or withheld judgment." I.C. § 18-8304(3). SORA registrants must update their registry information any time there is a change of documented information. I.C. §

2

18-8309. SORA registration

> is for life; however, any offender, other than a recidivist, an offender who has been convicted of an aggravated offense, or an offender designated as a violent sexual predator, may, after a period of ten (10) years from the date the offender was released from incarceration or placed on parole, supervised release or probation, whichever is greater, petition the district court for a show cause hearing to determine whether the offender shall be exempted from the duty to register as a sexual offender.

I.C. § 18-8310(1). An "aggravated offense" is, among others, a violation of § 18-1506, "if at the time of the commission of the offense the victim was below the age of thirteen years." I.C. § 18-8303. Under the plain language of SORA, a defendant who pleads guilty to sexual abuse of a child under the age of thirteen is therefore required to register as a sexual offender for life.

Prior to July 2009, SORA's definition of aggravated offense was not so broad. Indeed, until July 1, 2009, only certain specifically enumerated sexual offenses, not including § 18-1506, qualified as aggravated offenses. *See* 2009 Idaho Sess. Laws 761. Furthermore, when Johnson entered his guilty plea in 1998, there was no "aggravated offense" under SORA. *See* 1998 Idaho Sess. Laws 1277. In 1998, any sexual offender other than a "violent sexual predator" could petition for exemption from registration. *See id.* at 1282. So, as Johnson points out, absent the 2009 SORA amendments, he would unquestionably be eligible to petition the district court for exemption from registration. Johnson thus argues that "applying the concept [from the aggravated offense definition] of 'below the age of thirteen years' [to him] is merely arbitrary." Johnson contends that "[a]t no time prior to July 1, 2009 was [he] an 'aggravated offender'; and "[t]here are absolutely no facts that would or could elevate him to an 'aggravated offender.'"

### 1. *Ex Post Facto* Concerns.

"Although the Latin phrase '*ex post facto*' literally encompasses any law passed 'after the fact,' it has long been recognized by [the U.S. Supreme Court] that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990). The U.S. Supreme Court has previously considered, and rejected, "a claim that a sex offender registration and notification law constitutes retroactive punishment forbidden by the *Ex Post Facto* Clause." *Smith v. Doe*, 538 U.S. 84, 92 (2003). In *Doe*, the Court set out the "framework for the [*ex post facto*] inquiry." *Id.* In order to survive an *ex post facto* challenge, a law must be nonpunitive in purpose and effect. *Id.* The

3

reviewing court must first determine whether the Legislature meant for the statute to establish "civil proceedings." *Id.* (internal quotation marks omitted). If the Legislature dubbed the statute civil but enacted it with the intent to punish, and it would punish with retroactive effect, the law offends the *Ex Post Facto* Clause. *Id.* But if "the intention was to enact a regulatory scheme that is civil and nonpunitive, [a reviewing court] must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Id.* (internal quotation marks omitted) (second alteration in original). The reviewing court should normally defer to the Legislature's stated purpose, so "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (internal quotation marks omitted).

Whether a law is civil or criminal is a matter of statutory construction. *Id.* "Where a legislative restriction 'is an incident of the State's power to protect the health and safety of its citizens,' it will be considered 'as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment.'" *Id.* at 93–94. In *Doe*, the Court found that Alaska's version of SORA, on its face, created a regulatory mechanism for sexual offender registration for the legitimate purpose of protecting Alaska's citizens. *Id.* at 93.

This Court has already held that SORA "provides an essential regulatory purpose that assists law enforcement and parents in protecting children and communities." *Ray v. State*, 133 Idaho 96, 101, 982 P.2d 931, 936 (1999). In *Ray*, we considered SORA before the 2009 amendments. *See id.* Although the Court obviously could not consider the factors expressed in *Smith v. Doe*, 538 U.S. 84, 92 (2003), issued four years after *Ray*, we nonetheless conducted an analysis similar to *Doe's*. We noted that the Legislature intended SORA to be remedial, not punitive. *Ray*, 133 Idaho at 100–01, 982 P.2d at 935–36. We reached this conclusion by considering the Legislature's stated findings, which specifically provided that the State's policy was to help local law enforcement protect communities against known sexual offenders. *See id.* We recognized that registrants might experience increased suspicion and investigation, but they will still be afforded due process, and the increased attention is the result of the underlying conviction, not the registration. *Id.* at 101, 982 P.2d at 936. At the time, nearly any registrant could petition for exemption from continued registration, which we found lessened any punitive aspect. *Id.* We ultimately concluded that, despite "the fact that registration . . . prolong[s] the

4

stigma attached to [sex crime] convictions[,] . . . registration is not an additional punishment; it does not extend a sentence. Rather, registration provides an information system that assists in the protection of communities." *Id.*

More recently, the Court of Appeals considered an *ex post facto* challenge to SORA. *See State v. Gragg*, 143 Idaho 74, 137 P.3d 461 (2005). Citing the Legislature's codified findings in SORA, and our opinion in *Ray*, the Court of Appeals concluded that the Legislature intended SORA to be nonpunitive. *Id.* at 77, 137 P.3d at 464. The court then evaluated the effects of SORA in light of *Smith v. Doe*, 538 U.S. 84, 92 (2003), holding that the effects were not so clearly punitive as to override the Legislature's stated purpose. *Gragg*, 143 Idaho at 78, 137 P.3d at 465. The court recognized that in *Doe*, the U.S. Supreme Court dismissed many of the same arguments raised in *Gragg*, including contentions that sex offender registries effectively brand offenders with a "scarlet letter," and make it impossible for registrants to gain employment. *See id.* The court wrote that "[t]he [U.S.] Supreme Court further noted that any negative impact on the sex offender is not the result of registration, but instead flows from the fact of the conviction itself." *Id.*

The Court of Appeals addressed, and discounted, the differences between Alaska's and Idaho's versions of SORA. *Id.* Notably, the court discussed that Alaska's version requires offenders to register for fifteen years, while Idaho's registry is for life. *Id.* But the court determined that Idaho's provision allowing most registrants to petition for exemption lessens the severity of the lifetime registration requirement. *Id.* Nor was the court concerned that, unlike Alaska, Idaho's SORA requires registrants to appear in person to update their information. *Id.* The court was also unconcerned that registrants must pay ten dollars when they register because that fee is waivable upon a finding of indigency and therefore is not a mandatory penalty. *Id.* For each of these reasons, the court concluded that SORA was nonpunitive and thus not an unconstitutional *ex post facto* law. *Id.* The Court of Appeals opinion in *Gragg* is thoughtful and its holding is correct.

SORA has changed little since this Court considered it in *Ray* and since the Court of Appeals considered it in *Gragg*. The presently codified SORA findings in I.C. § 18-8302 are nearly identical to the version we evaluated in *Ray*. *Compare* 1998 Idaho Sess. Laws 1276 *with*

I.C. § 18-8302 (Supp. 2011).[1] This Court has thus already concluded that SORA is regulatory in purpose. Furthermore, the Court of Appeals' analysis in *Gragg* aptly demonstrated that SORA, generally, is nonpunitive in effect. The only real issue, therefore, is whether the Legislature's classification of Johnson's offense as an "aggravated offense," subsequent to his guilty plea, is an exception to the general understanding that SORA is nonpunitive.

According to the Statement of Purpose accompanying the 2009 SORA amendments, they were intended only as "technical amendments and updates." Statement of Purpose, H.R. 178, 60th Leg., 1st Reg. Sess. (Idaho 2009). Because SORA as a whole is regulatory in purpose, there is no reason to infer that the Legislature intended these "technical amendments and updates" as anything other than civil and nonpunitive. In order for the 2009 SORA amendments to violate the *ex post facto* clause, despite their civil denomination, we would have to determine that they are nonetheless punitive.

In this regard, Johnson highlights the fact that the 2009 amendments would forever preclude him from petitioning for exemption despite the apparent likelihood that he will not reoffend. The test that we must apply, however, focuses on whether the challenged statute is, "by the clearest proof," so punitive as to override the Legislature's regulatory purpose. *Doe*, 538 U.S. at 92. "The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Id.* at 103. The U.S. Supreme Court has dismissed *ex post facto* claims "imposing regulatory burdens on individuals convicted of crimes without any corresponding risk assessment." *Id.* at 104. Moreover, "[t]he State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the *Ex Post Facto* Clause." *Id.* The fact that a sexual offender, convicted of a certain class of crime, may be required to register for life is not so punitive that it overrides SORA's regulatory purpose. This is particularly so because the Legislature need not

---

[1] In *Ray*, the Court considered the Legislature's SORA findings codified in 1998. *See Ray v. State*, 133 Idaho 96, 100–101, 982 P.2d 931, 935–36 (1999) (quoting from I.C. § 18-8302 (Supp. 1998)). Those SORA findings have only been amended once since 1998. In 1998, the text read: "The legislature finds that sexual offenders present a *significant risk of re-offense* and that efforts of law enforcement agencies to protect their communities . . . ." 1998 Idaho Sess. Laws 1276 (emphasis added). In 2011, the text was revised to read: "The legislature finds that sexual offenders present a *danger* and that efforts of law enforcement agencies to protect their communities . . . ." 2011 Idaho Sess. Laws 882 (emphasis added). The text the Court considered in *Ray* is otherwise the same.

make particularized findings in the regulatory context.

## 2. Impairment of Contract.

Johnson also argues that the 2009 SORA amendments impair the contractual arrangement created by his plea agreement, in violation of the U.S. Constitution. Johnson's plea agreement provided: "The Defendant must comply with any legal requirements concerning registration as a sex offender under the laws of the [S]tate of Idaho or any other state where the Defendant resides." Johnson contends that in his agreement he did not agree to abide by "future laws," and that "[h]e was not in a position to contemplate a future law that would so impact him." According to Johnson, it is unclear from the words of the plea agreement just which laws he agreed to be bound by and therefore his written agreement with the State is ambiguous.

The U.S. Constitution prohibits states from passing "law[s] impairing the obligation of contracts." U.S. Const. art. I, § 10. Plea agreements are contractual and thus construed according to the principles of contract law. *State v. Hosey*, 134 Idaho 883, 886, 11 P.3d 1101, 1104 (2000). "The interpretation of a contract's meaning and legal effect are questions of law to be decided by the Court if the terms of the contract are clear and unambiguous. The meaning of an unambiguous contract must be determined from the plain meaning of the contract's own words." *Id.* Whether a plea agreement is ambiguous is a question of law. *State v. Peterson*, 148 Idaho 593, 595, 226 P.3d 535, 537 (2010). Johnson agreed to "comply with *any* legal requirements concerning registration as a sex offender" in Idaho "or any other states where [he] resides." The language is obviously forward-looking in nature, including both his then-present residence and any future residence, indicating an intent that he must register pursuant to any future requirements. It is unclear, then, how the 2009 SORA amendments could impair Johnson's plea agreement.

## 3. Due Process Concerns.

Johnson's last theory is that applying the 2009 SORA amendments to him, and thus denying him the opportunity to petition for exemption from registration, would violate his right to due process. Johnson argues that the State cannot attach a "badge of infamy" upon him, based on his risk of re-offense, without affording him a chance to be heard.

Johnson is correct that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. [C]ertainly where the State attaches 'a badge of infamy' to the citizen, due process

7

comes into play." *Smith v. State*, 146 Idaho 822, 827, 203 P.3d 1221, 1226 (2009) (internal citations and quotation marks omitted). But, as the State points out, the 2009 amendments do not actually create a new label or offender status. Throughout his briefing, Johnson uses the term "aggravated offender" to refer to a sexual offender who has committed an aggravated offense, as defined in I.C. § 18-8303. Johnson's nomenclature, however, is of his own invention. SORA does not define or use the term "aggravated offender." *See* I.C. § 18-8303 (defining terms used in SORA). The 2009 amendments do not attach additional notoriety to his registration status, but, rather, just affect his ability to petition for exemption. Thus, he has not been deprived of due process.

### B.     SORA and the Idaho Constitution.

Finally, Johnson asks the Court to find the 2009 amendments, as applied to him, to be violative of the Idaho Constitution's protections against *ex post facto* laws and impairment of contracts. This Court has, in the search and seizure context, held that the Idaho Constitution is more protective of citizen rights than the U.S. Constitution, despite the similar wording of the Fourth Amendment and Article I, § 17 of the Idaho Constitution. *See State v. Fees*, 140 Idaho 81, 88–89, 90 P.3d 306, 313–14 (2004). Where the Court has so held, it was "based on the uniqueness of our state, our Constitution, and [this Court's] long-standing jurisprudence." *State v. Donato*, 135 Idaho 469, 472, 20 P.3d 5, 8 (2001). In other words, there were "factors support[ing] divergence from the interpretation of the Fourth Amendment by the United States Supreme Court." *Id.* We have also acknowledged, as the Court of Appeals noted in *State v. Gragg*, that the protections against *ex post facto* laws under the federal and Idaho constitutions *might not* be co-extensive. *See* 143 Idaho 74, 75, 137 P.3d 461, 462 (Ct. App. 2005) (citing *Quinlan v. Idaho Comm'n for Pardons and Parole*, 138 Idaho 726, 731, 69 P.3d 146, 151 (2003); *State v. Lindquist*, 99 Idaho 766, 769, 589 P.2d 101, 104 (1979)). In the SORA context, however, there is no apparent reason for us to depart from the federal understanding of the rights at issue.

### C.     Jurisdiction.

Despite the previous discussion, and the need for judicial guidance on this issue, we lack jurisdiction to rule on the merits of Johnson's appeal. Jurisdictional questions are fundamental issues that this Court must address regardless of whether the parties themselves have raised them. *State v. Hartwig*, 150 Idaho 326, 328, 246 P.3d 979, 981 (2011). "This Court's ability to sua

sponte review jurisdiction extends to an examination of the district court's jurisdiction." *Id.* "Absent a statute or rule extending its jurisdiction, the trial court's jurisdiction to amend or set aside a judgment expires once the judgment becomes final, either by expiration of the time for appeal or affirmance of the judgment on appeal." *State v. Jakoski*, 139 Idaho 352, 354, 79 P.3d 711, 713 (2003). *But see State v. Knutsen*, 138 Idaho 918, 921, 71 P.3d 1065, 1068 (Ct. App. 2003) (holding that a district court may reduce or modify a sentence, under Criminal Rule 35, within a limited time after imposing the sentence). A district court's dismissal of a criminal case is tantamount to a judgment and is final 42 days later, when the time for appeal runs. *See* I.A.R. 11(c)(4) (providing that any order terminating a criminal action is an appealable order); I.A.R. 14(a) (providing that an appeal must be filed within 42 days of when the district court enters the appealable order). Jurisdiction of a criminal matter thus expires 42 days after the district court dismisses the case unless an appeal or some statute or rule extends that jurisdiction.

> I.C. § 18-8310(1), the statute Johnson invoked in his petition for exemption, provides:

> Registration under [SORA] is for life; however, any offender, other than a recidivist, an offender who has been convicted of an aggravated offense, or an offender designated as a violent sexual predator, may, after a period of ten (10) years from the date the offender was released from incarceration or placed on parole, supervised release or probation, whichever is greater, petition the district court for a show cause hearing to determine whether the offender shall be exempted from the duty to register as a sexual offender. If the offender was convicted in Idaho, the offender shall file his or her petition in the county in which he or she was convicted. If the offender was convicted in a jurisdiction other than Idaho, the offender shall file his or her petition in the county in which he or she resides.

I.C. § 18-8310(1).

We have previously decided cases involving offenders who apparently relied on the district court's criminal jurisdiction to subsequently petition for SORA exemption. *See, e.g.*, *State v. Kimball*, 145 Idaho 542, 181 P.3d 468 (2008) (considering the merits of a defendant's petition several years after his conviction); *State v. Robinson*, 143 Idaho 306, 142 P.3d 729 (2006) (same). *See also State v. Hartwig*, 150 Idaho 326, 328, 246 P.3d 979, 981 (2011) (neglecting to discuss the district court's jurisdiction over the petition in the first instance; vacating the district court's decision on jurisdictional grounds based on State's failure to timely file a motion for reconsideration in the district court). From the plain language of the statute, however, it is clear that the Legislature did not extend the district court's jurisdiction to entertain petitions as part of a

9

criminal action. This is made clear by the last sentence of I.C. § 18-8310(1), which provides that offenders convicted elsewhere than in Idaho must "file his or her petition in the county in which he or she resides." It is rather obvious that a person convicted out of state could not petition for relief in the criminal proceeding that resulted in the conviction. That, plus the fact that registration is regulatory, rather than criminal, in nature indicates it to be a civil proceeding. Sexual offenders seeking SORA exemption under I.C. § 18-8310(1) must therefore file their petition in a new civil action if their criminal case has been dismissed or fully adjudicated, and the time for appeal has run.

Johnson, like the appellants in *Hartwig*, *Kimball*, and *Robinson*, filed his petition as a matter arising in his criminal case. But the district court had, some seven years earlier, dismissed the case. The district court therefore lacked jurisdiction to consider the merits of Johnson's petition. We likewise lack jurisdiction on appeal.

### III.
### CONCLUSION

Sexual offenders seeking exemption from SORA must petition the district court in a separate civil action. Because Johnson filed his petition in the already-dismissed criminal case, the district court lacked jurisdiction. The district court's decision is therefore vacated.

Chief Justice BURDICK, and Justice HORTON CONCUR.


Justice EISMANN, specially concurring.

I concur in the majority opinion. Johnson's motion filed in the criminal case cannot be considered as a civil petition. As we held in *State v. Jakoski*, 139 Idaho 352, 355, 79 P.3d 711, 714 (2003), "It would be too much of a stretch to hold that a motion filed in a criminal case can be considered as a pleading commencing civil litigation."

I would also add that the issue of the subject matter jurisdiction of the court in the criminal case to entertain a motion to relieve the criminal defendant of the duty to register as a sex offender was not raised either by a party or sua sponte by a member of the Court in *State v. Hartwig*, 150 Idaho 326, 246 P.3d 979 (2011), *State v. Kimball*, 145 Idaho 542, 181 P.3d 468 (2008), or *State v. Robinson*, 143 Idaho 306, 142 P.3d 729 (2006).

Justice W. JONES CONCURS.