**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41328**

| | | |
|---|---|---|
| RBRT GROVES, aka ROBERT GEORGE GROVES, III, | ) ) ) | **2014 Opinion No. 31** |
| Petitioner-Appellant, | ) ) | **Filed: April 21, 2014** |
| v. | ) ) | **Stephen W. Kenyon, Clerk** |
| STATE OF IDAHO, | ) ) | |
| Respondent. | ) ) ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Order dismissing petition seeking exemption from registration as a sex offender, <u>affirmed</u>.

Fuller Law Offices, Twin Falls, for appellant. Daniel S. Brown argued.

Hon. Lawrence G. Wasden, Attorney General; Cheryl Emmons-Meade, Deputy Attorney General, Boise, for respondent. Cheryl Emmons-Meade argued.

---

WALTERS, Judge Pro Tem

Under the Sexual Offender Registration Notification and Community Right-to-Know Act (SORA),[1] Robert[2] Groves is required to register as a sex offender because he was convicted of lewd conduct with a minor under sixteen. Under the law applicable at the time of his conviction, Groves would have been eligible to petition for an exemption from the duty to register after serving his sentence. But, before Groves was able to petition for an exemption, the law was

---

[1] The "SORA" abbreviation reflects the prior short title of the act, the "Sex Offender Registration Act." Idaho Code § 18-8301 (1993). As a matter of consistency, Idaho appellate courts have continued to use to this abbreviation despite the adoption of a new short title. *See, e.g.*, *Bottum v. Idaho State Police, Bureau of Criminal Identification Cent. Sex Offender Registry*, 154 Idaho 182, 183, 296 P.3d 388, 389 (2013); *State v. Johnson*, 152 Idaho 41, 42, 266 P.3d 1146, 1147 (2011).

[2] The caption has an alternative spelling of Groves's first name, "RBRT."

1

amended to prohibit those convicted of lewd conduct from being granted an exemption. When Groves sought an exemption, the district court ruled that the amendments were to be applied retroactively and denied Groves's request for an exemption. On appeal, Groves argues that the retroactive application of the amendments is unconstitutional. We affirm.

## I.

## BACKGROUND

On May 22, 2000, Groves pleaded guilty to lewd conduct with a minor under sixteen in violation of Idaho Code § 18-1508. On July 17, 2000, Groves was sentenced to a unified term of ten years in prison with five years fixed. However, the court retained jurisdiction pursuant to I.C. § 19-2601(4). After the term of retained jurisdiction ended, the court placed Groves on probation for ten years. After the ten years elapsed, Groves was discharged from probation on July 7, 2011. As an additional consequence of his conviction, Groves was required to register as a sex offender unless granted an exemption from the duty to register. I.C. §§ 18-8304, 18-8307, 18-8310.

In 2013, Groves filed a petition to be exempted from registration requirements pursuant to I.C. § 18-8310. In support of his petition, he submitted an affidavit stating that he had completed probation, had paid all fees, had not committed additional sex offenses, had undergone sex offender treatment, and had been deemed a low risk to reoffend. The district court held that although Idaho Code § 18-8310 generally authorizes the court to exempt a sex offender registrant from the duty to register, the court may not provide this relief to "an offender who has been convicted of an aggravated offense." I.C. § 18-8310. Idaho Code § 18-8303 defines "aggravated offense" to include lewd conduct with a minor under sixteen. On this basis, the court ordered Groves to show cause why his petition should not be dismissed.

In response to the order to show cause, Groves argued that the denial of his petition would violate the Ex Post Facto Clauses of the United States and Idaho Constitutions. The provisions cited by the district court were not the provisions in effect when Groves was convicted. Indeed, under the law applicable at the time of Groves's conviction, he would have been able to seek relief under I.C. § 18-8310. Groves did not claim that the court erred by concluding that the amendments had retroactive effect; he concedes that Idaho courts have ruled that the amendments are applied retroactively. Instead, he claimed that the retroactive

2

application of the amendments, precluding relief, amounts to an unconstitutional ex post facto law.

The district court held a hearing on the ex post facto challenge. At the end of that hearing, the court directed both parties to file written briefs. Groves acknowledged that prior Idaho decisions have held that SORA is to be applied retroactively and that this retroactivity does not violate the Ex Post Facto Clause because the regime is civil in nature. However, Groves argued that no Idaho court has ruled on whether the amendments prohibiting him from being exempted from the duty to register are constitutional. He attempted to distinguish the Idaho precedents, analyzing SORA generally, from the effects of the later amendments. He argued that the amendments preclude relief and affirmatively burden offenders who expected to be eligible for relief and, relying upon that expectation, complied with all of the terms of probation, sought treatment, and otherwise attempted to become good candidates for relief. Furthermore, he argued that the district court denied him due process of law by prohibiting him from adducing testimony showing the impact of the registration requirement. After the hearing and after the briefing was submitted, the court denied Groves's petition. Groves timely appealed.

## II.

## ANALYSIS

Both the Idaho and United States Constitutions prohibit ex post facto laws. *See* U.S. CONST. art. I, § 9, cl. 3; U.S. CONST. art. I, § 10, cl. 1; IDAHO CONST. art. I, § 16.[3] "[T]he ex post facto doctrine prohibits a state from retroactively increasing the punishment for criminal acts." *State v. Gragg*, 143 Idaho 74, 75, 137 P.3d 461, 462 (Ct. App. 2005). However, "civil proceedings" do not amount to a violation of the Ex Post Facto Clauses. *Id.* at 76, 137 P.3d at 463. Determining whether "a statutory scheme is civil or criminal is a question of statutory construction." *Id.*; *see Smith v. Doe*, 538 U.S. 84, 92 (2003). The process of statutory construction begins by determining "whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other."

---

[3]     This Court has held that where a party fails to make an argument that the Idaho Constitution should be applied differently from the analogous federal provision, we will assume the provisions are coextensive. *State v. Gragg*, 143 Idaho 74, 76, 137 P.3d 461, 463 (Ct. App. 2005)

3

*Gragg*, 143 Idaho at 76, 137 P.3d at 463. Thereafter, a seven-factor, nonexhaustive test is used to determine whether the effects of the regime are so punitive so as to overcome the State's intention to create a civil proceeding. *Smith*, 538 U.S. at 92.

A long line of Idaho cases have upheld SORA over ex post facto challenges. In *Bottum v. Idaho State Police, Bureau of Criminal Identification Cent. Sex Offender Registry*, 154 Idaho 182, 296 P.3d 388 (2013), the Idaho Supreme Court reviewed, in part, the historical evolution of SORA:

> In 1998, the legislature repealed the Sex Offender Registration Act, Ch. 411, § 1, 1998 Idaho Sess. Laws 1275, 1276, and it enacted the Sexual Offender Registration Notification and Community Right-to-Know Act (SORA), *id.*, § 2, at 1276-90. That act was codified as Idaho Code §§ 18-8301 through 18-8326. It also expressly applied retroactively to persons who had been convicted of specified crimes before the statute was enacted. It applied to any person who:
>
> > Pleads guilty to or has been found guilty of a crime covered in this chapter prior to July 1, 1993, and the person, as a result of the offense, is incarcerated in a county jail facility or a penal facility or is under probation or parole supervision, on or after July 1, 1993.
>
> *Id.* at 1278. The crimes covered by the chapter included lewd conduct with a minor child in violation of Idaho Code section 18-1508, *id.* at 1278 (codified as I.C. § 18-8304(1)(a)), the crime of which [the petitioner] had been convicted before the statute was enacted. Because he was still on probation on July 1, 1993, the statute applied retroactively to him.
>
> As originally enacted, Idaho Code section 18-8310 permitted certain sex offenders to petition the district court to be exempted from the duty to register as a sex offender once ten years had elapsed from the expiration of their period of probation. *Id.* at 1282. The only sex offenders excluded from that opportunity were violent sexual predators. *Id.*
>
> In 2001, the legislature amended section 18-8310 to provide that any offender who had been convicted of an "aggravated offense" also could not petition to be exempted from the duty to register. Ch. 194, § 3, 2001 Idaho Sess. Laws 659, 661. It defined an aggravated offense [in I.C. § 18-8303] to include lewd conduct only if the victim was less than twelve years of age. *Id.* at 659.
>
> In 2009, the legislature amended the definition of aggravated offense [in I.C. 18-8303] to provide that lewd conduct was an aggravated offense, regardless of the age of the victim. Ch. 250, § 1, 2009 Idaho Sess. Laws 761, 761. That amendment was approved on April 29, 2009, *id.* at 764, and became effective on July 1, 2009, I.C. § 67-510.

*Bottum*, 154 Idaho at 183-84, 296 P.3d at 389-90. Since SORA was enacted, the statute and its amendments have been frequently litigated. In 1999, the Idaho Supreme Court held that "Idaho's Sexual Offender Registration Act provides an essential regulatory purpose . . .

4

registration is not an additional punishment; it does not extend a sentence." *Ray v. State*, 133 Idaho 96, 101, 982 P.2d 931, 936 (1999). *Ray* predated *Smith*, 538 U.S. 84, the most recent United States Supreme Court decision on this matter. In light of *Smith*, this Court reexamined SORA in *Gragg*, 143 Idaho at 76, 137 P.3d 463. In that case, we observed that the express objective of the Idaho Legislature is civil: "to assist efforts of local law enforcement agencies to protect communities by requiring sexual offenders to register with local law enforcement agencies and to make certain information about sexual offenders available to the public." *Id.* (quoting I.C. § 18-8302). Moreover, after considering the most salient portions of the seven-factor test, we concluded that the effects of sex offender registration are not so punitive as to override the legislative intent to create a civil, regulatory scheme. *Gragg*, 143 Idaho at 77, 137 P.3d at 464.

Groves does not ask us to revisit these decisions and concedes that SORA is generally civil in nature. On appeal, his claim is narrower. He takes issue with the retroactive application of the 2001 and 2009 amendments to SORA.[4] As amended, SORA defines Groves's offense as an aggravated offense and precludes those who have committed aggravated offenses from obtaining an exemption from the sex offender registration requirement. *See* I.C. § 18-8303, 8310. Prior Idaho decisions unequivocally hold that these amendments are to be applied retroactively unless such application results in a constitutional violation. *Bottum*, 154 Idaho at 184, 296 P.3d at 390. Here, Groves claims that retroactive application of the amendments violates the Ex Post Facto Clauses of the Idaho and United States Constitutions. Accordingly, in order for us to determine whether the district court erred by applying the amendments retroactively, we must address Groves's narrow ex post facto challenge.

---

[4] At oral argument, and in his briefing, Groves made clear that he has misread the statutory history. For example, he stated that "In 2011, as set forth above, the legislature amended the definition of aggravated offense to include lewd conduct as an 'aggravated offense,' regardless of the age of the victim." Similarly, at oral argument, Groves repeatedly claimed that the 2011 amendment had been applied to his case to preclude relief. The amendment at issue, which rendered all lewd conduct convictions "aggravated offenses" regardless of whether the victim was younger than twelve years old, was enacted in 2009. *See* 2009 Idaho Sess. Laws ch. 250, § 1 at 761. In 2011, the legislature amended the definition of "aggravated offense" to include substantially similar crimes committed outside of Idaho, but that amendment is plainly irrelevant here.

The Idaho Supreme Court's decision in *State v. Johnson*, 152 Idaho 41, 43, 266 P.3d 1146, 1148 (2011) addressed this issue, but its analysis does not amount to binding precedent. In that case, Johnson filed his petition in a previously dismissed criminal case. *Id*. Because the dismissal was the functional equivalent of a judgment, the case became final and the court lost jurisdiction forty-two days after the dismissal was entered. *Id*. at 47, 266 P.3d at 1152. On that basis, the Supreme Court vacated the district court's decision for lack of jurisdiction. *Id*. at 48, 266 P.3d at 1153.

The Idaho Supreme Court has ruled that when a "statement is not necessary to decide the issue presented to the appellate court, it is considered to be dictum and not controlling." *State v. Hawkins*, 155 Idaho 69, 74, 305 P.3d 513, 518 (2013). In *Johnson*, the jurisdictional analysis was the only analysis "necessary to decide the issue presented" to the Court. Accordingly, the Court's analysis of the ex post facto issue is dicta and does not control. Nonetheless, we can consider *Johnson* as persuasive authority and view the ex post facto analysis as "judicial guidance." *Johnson*, 152 Idaho at 47, 266 P.3d at 1152. Moreover, because we find its reasoning persuasive, we adopt it here.

The facts in the *Johnson* case closely mirror the facts of this case. Johnson was convicted of a sex offense before the 2001 amendments to SORA. *Id.* at 42, 266 P.3d at 1147. He was sentenced to probation and was eventually discharged from probation. *Id*. at 43, 266 P.3d at 1148. After the 2009 amendments to SORA had become effective, Johnson filed a petition seeking an exemption from the registration requirement. *Id*. Under the version of I.C. § 18-8310 that applied at the time of his conviction, Johnson would have been eligible to seek an exemption from the registration requirement. *Id*. However, by the time Johnson filed his petition, the 2001 and 2009 amendments had become effective. *Id*. Those amendments defined Johnson's crime as an aggravated offense and precluded the granting of an exemption for a person convicted of an aggravated offense. *Id*. Johnson claimed, inter alia, that the "amendments run afoul of the U.S. Constitution's prohibition of *ex post facto* laws." *Id*.

Johnson raised the same claim Groves does on appeal, a narrow claim that the retroactive application of the 2001 and 2009 amendments to SORA violates the Ex Post Facto Clauses of the United States and Idaho Constitutions. *Id*. at 45, 266 P.3d 1150. The Court noted that the amendments were intended as "technical amendments and updates." *Id*. (quoting Statement of Purpose, H.R. 178, 60th Leg., 1st Reg. Sess. (Idaho 2009)). It then concluded that "there is no

6

reason to infer that the Legislature intended these 'technical amendments and updates' as anything other than civil and nonpunitive." *Id*. Turning to the effects prong of the ex post facto analysis, the court concluded that "the fact that a sexual offender, convicted of a certain class of crime, may be required to register for life is not so punitive that it overrides SORA's regulatory purpose." *Id*. at 46, 266 P.3d 1151.

In short, *Johnson* considered and addressed Groves's claim and found no constitutional violation. While the procedural posture of *Johnson* limited the ability of the Court to issue a binding holding, we are not so constrained. We adopt the reasoning of *Johnson* and reach the same conclusion.[5]

While the reasoning we adopt from *Johnson* is sufficient to deny Groves's claim, we note an additional basis for our conclusion that the retroactive application of the amendments to SORA is not unconstitutional. In *Gragg*, the defendant committed a sex offense in 1989. *Gragg*, 143 Idaho at 74, 137 P.3d at 461. The original SORA was enacted in 1993. Under the law applicable at the time of his offense and conviction, Gragg had no duty to register. After he

---

[5]    Groves argued, at length, that we should distinguish *Johnson* on two, independent grounds. First, he argued that *Johnson* is distinguishable because it did not address the act as amended. As stated in note 4, *supra*, Groves has misread the legislative history. *Johnson* was decided after the 2009 amendment and explicitly references language added in the 2009 amendment. *See, e.g.*, *Johnson*, 152 Idaho at 43, 266 P.3d at 1148 (2011) (for example, the case noted that "An 'aggravated offense' is, among others, a violation of § 18-1506, 'if at the time of the commission of the offense the victim was below the age of thirteen years.'" The language regarding victims under thirteen years of age was added in the 2009 amendment.). Because the portion of the statute Groves challenges was part of the statute when *Johnson* was decided, we cannot distinguish *Johnson* on that basis.

Groves also argues that *Johnson* does not address his claim that the registration system is irrational or arbitrary. He argues that he should be permitted to show that he is not a risk to reoffend and, if he did so, it would be irrational to require a person with a low risk to reoffend to continue to register. *Johnson* addressed a substantially similar claim:

> Johnson highlights the fact that the 2009 amendments would forever preclude him from petitioning for exemption despite the apparent likelihood that he will not reoffend. . . . The *Ex Post Facto Clause* does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. . . . The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the *Ex Post Facto Clause*.

*Johnson*, 152 Idaho at 45, 266 P.3d at 1150 (internal citations and quotations marks omitted).

was convicted, SORA was enacted and imposed a duty to register retroactively. Nonetheless, we held that the Ex Post Facto Clauses were not violated by requiring Gragg to register as a sex offender. In our view, the effects of retroactivity on Gragg, compelling him to register when he had no prior duty to do so, is significantly more burdensome than the effects of retroactivity on Groves. The retroactive effect of imposing registration requirements for the first time was a substantial change. Requiring Groves to continue registering is a burden, but is a lesser burden. This is especially true because the decision to grant an exemption under I.C. § 18-8310 is discretionary and requires a finding that one is "'not a risk' to reoffend." *State v. Kimball*, 145 Idaho 542, 546, 181 P.3d 468, 472 (2008), *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011) (quoting I.C. § 18-8310). Because we did not conclude that the effects of retroactivity rendered SORA punitive in *Gragg*, we find no basis to do so here, where the effects are less burdensome.

As an alternative basis for relief, Groves claims he has been denied due process of law. The record shows that the district court determined that Groves was entitled to a hearing. The record shows that the hearing did, in fact, occur. We do not have a transcript of that hearing, but the minutes of that hearing appear in the record. From that scant record, it appears that Groves was denied the ability to call witnesses because he failed to provide notice of his intent to do so. Thereafter, in his written briefing to the district court, Groves claimed that he should be provided a hearing to present evidence and testimony regarding the impact of the legislative amendments because the amendments create a "badge of infamy."[6] The district court ruled that the amendments did not label or categorize Groves in any manner; therefore, no additional procedure was required.

---

[6] From the briefing, both below and in this Court, it is not clear if Groves is also complaining that he should have been permitted to testify at the hearing. Both below, and on appeal, Groves's due process argument has little legal support or citation. In our view, he has provided legal authority solely for his contention that the amendments create a "badge of infamy." To the extent he intends his due process claim to assert additional errors, these are unsupported by legal citations or argument. We decline to consider those additional claims. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) ("When issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered.").

In support of his contention that he was denied due process of law, Groves cites an Idaho Supreme Court decision that held that Idaho's system for designating a person a "violent sexual predator" failed to comport with the constitutional requirement of procedural due process. *Smith v. State*, 146 Idaho 822, 827, 203 P.3d 1221, 1226 (2009). It held that "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id*. (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). In that case, the Court reasoned that the "violent sexual predator" designation functions as a "badge of infamy" because it affirmatively labels an offender. *Smith*, 146 Idaho at 827, 203 P.3d at 1226. Furthermore, the designation "is based upon a factual determination of probable future conduct; i.e., that the offender poses a high risk of committing an offense or engaging in predatory sexual conduct." *Id*. at 828, 203 P.3d at 1227.

We conclude that the holding in *Smith* regarding "violent sexual predators" is inapposite and further conclude that the reasoning in *Smith* shows that Groves's due process claim is meritless. In that case, the Court distinguished "the duty to register as a sex offender" from being designated a "violent sexual predator" because the former "is triggered simply by reason of conviction for a specified crime." *Id*. It reasoned that because the duty to register is triggered "solely on the fact of conviction of a predicate offense" and because an offender was provided due process to dispute that charge prior to his conviction, he is not entitled to additional due process. *Id*.

The determination that an offense is an "aggravated offense" is analogous to the determination of which offenders must register and is not analogous to designating a person a "violent sexual predator." As is relevant here, I.C. § 18-8303 defines an "aggravated offense" and does so by reference to the crime charged. This is analogous to the provision in I.C. § 18-8304 that sets forth the crimes that trigger a duty to register. Both the duty to register and eligibility to seek an exemption from the duty to register are triggered "simply by reason of conviction for a specified crime." Moreover, designating an offense an "aggravated offense" does not affix any "badge of infamy" because it is a classification of the offense, not the offender. Moreover, unlike the "violent sexual predator" label, the determination that an offense is aggravated does label a person as having been specifically found to be likely to engage in any

specific conduct in the future.  Finally, Groves was afforded procedural due process prior to his conviction.  For these reasons, Groves was not entitled to additional procedural due process.[7]

## III.

## CONCLUSION

We adopt the reasoning set forth in *Johnson* and conclude, as the Idaho Supreme Court did, that the 2001 and 2009 amendments to SORA are applied retroactively to prohibit those convicted of aggravated offenses from seeking exemptions from the duty to register as a sex offender.  This retroactive application does not amount to an impermissible ex post facto law.  Furthermore, a sex offender is not entitled to additional procedural due process in determining whether his offense is an aggravated offense.  The process the offender was entitled to was given prior to conviction.  For these reasons, the judgment of the district court dismissing the petition is affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**

---

[7]     As explained above, *Johnson* is not binding.  We briefly note that the *Johnson* Court reached the same conclusion on nearly identical facts:

> Johnson's last theory is that applying the 2009 SORA amendments to him, and thus denying him the opportunity to petition for exemption from registration, would violate his right to due process.  Johnson argues that the State cannot attach a "badge of infamy" upon him, based on his risk of re-offense, without affording him a chance to be heard. . . . the 2009 amendments do not actually create a new label or offender status. . . .  The 2009 amendments do not attach additional notoriety to his registration status, but, rather, just affect his ability to petition for exemption.  Thus, he has not been deprived of due process.

*Johnson*, 152 Idaho at 46, 266 P.3d at 1151.