# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 38477

| | |
|---|---|
| HASAN ICANOVIC, | ) |
| | ) |
| Petitioner-Appellant, | ) Boise, September 2015 Term |
| | ) |
| v. | ) 2015 Opinion No. 120 |
| | ) |
| STATE OF IDAHO, | ) Filed: December 23, 2015 |
| | ) |
| Respondent. | ) Stephen W. Kenyon, Clerk |

Appeal from the district court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge.

The district court's dismissal of the petition for post-conviction relief is <u>affirmed</u>. Costs on appeal are awarded to the respondent.

Sara B. Thomas, State Appellate Public Defender, Boise, attorney for appellant. Justin M. Curtis argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent. Kenneth K. Jorgensen argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Hasan Icanovic (Icanovic) appeals the district court's dismissal of his petition for post-conviction relief brought on the ground that he received ineffective assistance of counsel. Icanovic argues that his attorney's advice offered in connection with his consideration and acceptance of a plea bargain was deficient and that but for this advice he would not have pled guilty to felony domestic battery. At issue is his attorney's advice regarding the immigration-related consequences of his guilty plea. The State of Idaho (State) argues the court properly found neither deficient performance by counsel nor prejudice to Icanovic. Icanovic appeals, requesting that his guilty plea and conviction be vacated and the case remanded. We affirm the dismissal of Icanovic's petition for post-conviction relief.

## II. FACTUAL AND PROCEDURAL BACKGROUND

1

This appeal for post-conviction relief comes before this Court for a second time after being previously remanded for an evidentiary hearing.

1.     *The Guilty Plea*

Icanovic is a Bosnian citizen who formerly resided in Idaho. In May 2009, Icanovic was charged with felony attempted strangulation and misdemeanor domestic violence. Icanovic was represented on the charges by attorney Jared Martens (Martens). Icanovic alleged that, during his consideration of a plea deal offered by the State, Martens advised him that he would neither be deported to Bosnia nor barred from applying for United States citizenship if he entered into the plea bargain. In June 2009, pursuant to a negotiated plea agreement, Icanovic pled guilty to one count of felony domestic battery. The district court accepted this plea following an examination of Icanovic under oath and after a waiver of his applicable rights. The district court advised Icanovic that his plea "may result in deportation, the inability to obtain legal status, or denial of an application for United States citizenship." In September 2009, the district court sentenced Icanovic to eight years of incarceration with the first three years fixed; the court retained jurisdiction.

On September 14, 2009, the U.S. Bureau of Homeland Security, Department of Immigration and Customs (ICE) provided Icanovic and the district court with a notice of detainer. On February 18, 2010, the court suspended Icanovic's sentence and placed him on probation for ten years. One day later, Icanovic was served with an ICE detainer, and shortly thereafter he was taken into custody pending deportation. Icanovic never directly appealed his judgment of conviction.

2.     *The Padilla Decision*

On March 31, 2010—forty-one days after the district court placed Icanovic on probation—the United States Supreme Court issued its opinion in *Padilla v. Kentucky*, 559 U.S. 356 (2010). This decision addresses the issues raised in Icanovic's petition for post-conviction relief. In *Padilla*, a native Honduran who was a lawful permanent resident in the United States pled guilty to transporting a large quantity of marijuana. *Id.* at 359. Padilla's attorney allegedly advised him not to worry about the immigration consequences of his plea because he had resided in the United States for a long period of time. *Id.* However, following his plea, Padilla faced deportation. *Id.* The United States Supreme Court reversed the denial of Padilla's petition for post-conviction relief, holding that where the immigration consequences of a conviction are

2

easily determinable by reading the relevant statute, defense counsel have a duty to correctly advise a client of these consequences. *Id.* at 368. Prior to the *Padilla* decision, Idaho followed the same approach as Kentucky. *See Ray v. State*, 133 Idaho 96, 102, 982 P.2d 931, 937 (1999) ("The Sixth Amendment contains no implied duty for an attorney to inform his client of collateral consequences of a guilty plea."); *see also Retamoza v. State*, 125 Idaho 792, 797, 874 P.2d 603, 608 (Ct. App. 1994) (immigration consequences are collateral and therefore irrelevant to effectiveness of counsel).

### 3. The Post-Conviction Proceedings

In the wake of the *Padilla* decision, on October 9, 2010, Icanovic filed a petition for post-conviction relief (Petition) supported by his affidavit. In his Petition to the district court, Icanovic alleged that Martens's assistance was ineffective in two ways: (1) in response to a specific question, Martens told Icanovic that he would not be deported if he pled guilty; and (2) in response to a specific question, Martens told Icanovic that he would not lose his ability to apply for United States citizenship if he pled guilty. Given these alleged errors, Icanovic sought to have his guilty plea and judgment of conviction vacated. Shortly after the Petition was filed, the court issued a Notice of Intent to Summarily Dismiss Petition for Post-Conviction Relief. The court reasoned that, even if the allegations were true and Martens's performance was constitutionally deficient under *Strickland v. Washington*, 466 U.S. 668 (1984), and *Padilla*, this deficiency was cured by the district court informing Icanovic during the plea colloquy that he may be deported or denied United States citizenship. The court found that this advisement prevented Icanovic from establishing the prejudice prong of the *Strickland* standard.

However, in January 2011, the district court held a hearing on the issue. There, Martens testified that he did not affirmatively advise Icanovic as to whether there would or would not be immigration consequences to his plea. Instead, Martens testified that he advised Icanovic there *could* be consequences, but that he did not know whether the federal government would deport him. According to Martens, he told Icanovic, "They might. They might not." The district court found this testimony credible and that the advice offered was not deficient. The court further found that its advisement to Icanovic during his plea allocution cured any ineffectiveness in Martens's representation. Thereafter, the court issued a final order dismissing Icanovic's petition. Icanovic timely appealed to this Court.

### 4. First Appeal to this Court

In his first appeal to this Court, Icanovic argued that Martens's advice was constitutionally deficient under *Padilla* and that this deficiency was not cured by the district court's advisement. Specifically, he asserted that he adequately demonstrated both deficient performance and prejudice and that the district court erred in denying his Petition. In its brief, the State argued that *Padilla* does not control this case because it should not be applied retroactively. However, the State contemplated that, if *Padilla* does in fact apply, Icanovic's counsel may have rendered ineffective assistance by failing to adequately advise him of the immigration consequences of his plea. Icanovic replied that his conviction was not final on the date *Padilla* was issued, and therefore *Padilla* controlled. In the alternative, Icanovic argued for *Padilla* to apply retroactively.

The issue of *Padilla's* application, however, was not squarely decided by this Court. Instead, at oral argument before the Court, the State acknowledged that its position regarding the application of *Padilla* was in error and it considered that *Padilla* did apply to Icanovic's judgment of conviction. This consideration was reduced to writing, and on December 7, 2012, the State filed an Uncontested Motion for Remand and Statement in Support Thereof.

This Court granted the State's Uncontested Motion for Remand, ordering that the matter be remanded to district court for an evidentiary hearing so that Icanovic can "attempt to prove his claim of ineffective assistance of counsel for failing to adequately explain the immigration consequences of his guilty plea."

5.      *Remand*

On remand, the parties briefed the issue of Icanovic's ineffective assistance of counsel claim and the district court held a hearing on June 21, 2013. At the hearing, Icanovic testified that he was on parole and subject to an immigration hold. Icanovic had allegedly been informed that federal authorities were actively seeking to deport him. Icanovic testified that the only reason he had not been deported as of the date of the hearing was confusion regarding his place of birth and the fact that neither Croatia nor Bosnia were prepared to accept him. Next, the State called ICE supervisory detention deportation officer Brandon Jones (Jones) as a witness. Jones testified generally to the federal government's immigration and deportation procedures and also specifically stated that if an alien like Icanovic was given advice that a conviction for an aggravated felony might or might not result in their actual deportation such advice would be accurate. These were the only two witnesses called at the evidentiary hearing. The district court

4

heard argument following this testimony and ultimately took under advisement the issues of whether Martens provided Icanovic with constitutionally ineffective assistance and whether Icanovic suffered prejudice as a result.

On August 5, 2013, the district court issued a written order addressing Icanovic's ineffective assistance of counsel claim. In its order, the district court made certain pertinent findings of fact and conclusions of law. First, and in reconciling the inconsistencies between the testimony of Icanovic and Martens, the district court found Martens to be more credible. It stated: "[S]pecifically, this [c]ourt finds that Mr. Martens did in fact advise Mr. Icanovic that if he chose to plead guilty, it was possible he could be deported and that there could be adverse impacts on his ability to obtain United States citizenship." Second, even if Martens had not advised Icanovic that he may face immigration consequences, the district court again found that its advisory to Icanovic during the plea colloquy cured this defect. Third, the court was persuaded by Icanovic's affirmation that he understood the potential consequences of pleading guilty. Fourth, the court was influenced by the testimony of the ICE officer that the advice given by Martens to Icanovic concerning any possible deportation and citizenship consequences, along with the court's warnings during the plea hearing, were all "factually accurate in light of the relevant statutes, rules, and ICE practices and procedures."

For these reasons, the court found that Martens's advice to Icanovic regarding the immigration consequences of his plea was not deficient. The district court was persuaded by the testimony that the heightened obstacles encountered when dealing with deportations to Bosnia and Croatia rendered the likelihood of Icanovic's actual removal from the United States fairly low. The district court also reasoned that the term "deportable" as found in the applicable federal immigration statute renders a party eligible for deportation but does not require it. For all of these reasons, the court found that the first *Strickland* prong—deficient performance by counsel—was not met.

Turning to the second *Strickland* prong—whether any prejudice was suffered as a result of the deficient performance—the district court found that Icanovic suffered no prejudice as a result of the immigration-related advice given to him. In so finding, the court was influenced by the "overwhelming" amount of evidence against Icanovic, the difference between the maximum penalties faced by Icanovic under the offenses as originally charged and the lesser offense to which he pleaded, and "the admissions [Icanovic] has already made in entering his guilty plea."

5

The court reasoned that this was not a typical "he said, she said" case of domestic violence because physical evidence corroborated the accounts of the attack and an uninvolved third-party witness gave a detailed account to police of some of the events. Based on an examination of the evidence, the court found "even had [Icanovic] rejected the [S]tate's plea offer and proceeded to trial, it is overwhelmingly likely that he would be in the same, or likely a worse, position with respect to his sentence and immigration and citizenship status than he is today." For these reasons, the district court again found on remand that Icanovic's ineffective assistance of counsel claim fails.

### 6. *Second Appeal to this Court*

Icanovic appeals the district court's denial on remand of his Petition, arguing that the State previously conceded the deficient performance prong, and that the court incorrectly applied both the deficient performance and prejudice prongs. Icanovic maintains that, but for Martens's advice regarding the immigration consequences of his guilty plea, he would not have pled guilty to felony domestic violence. He contends that Martens's advice constituted deficient performance and that the district court's warnings did not cure the deficiency. As to the prejudice prong, Icanovic asserts that the pertinent inquiry is whether, but for the deficient advice, he would have pled guilty or instead would have proceeded to trial—the inquiry does not examine the likely result at trial. Further, Icanovic disputes the evidence relied upon by the district court in finding no prejudice. He takes specific issue with the court's reliance on the statements and admissions he made during his plea hearing, arguing such statements are not admissible in any future trial. The State argues that the district court correctly applied *Strickland* and *Padilla* to the facts of this case, and that the court's denial of post-conviction relief should be affirmed.

## III. ISSUE ON APPEAL

1. Whether the district court erred in dismissing Icanovic's petition for post-conviction relief alleging that he received ineffective assistance of counsel.

## IV. STANDARD OF REVIEW

Post-conviction proceedings are civil in nature and therefore the applicant's allegations must be proven by a preponderance of the evidence. When appellate review of a district court's denial of post-conviction relief follows an evidentiary hearing, rather than a summary dismissal, the evidence must be viewed most favorably to the trial court's findings. On review, this Court will not disturb the district court's factual findings unless they are clearly erroneous. However, this Court exercises free review of the district court's application of the relevant law to the facts. If a district court reaches the correct result by an

erroneous theory, this Court will affirm the order upon the correct theory. Additionally, constitutional issues are pure questions of law over which this Court exercises free review.

*Murray v. State*, 156 Idaho 159, 163–64, 321 P.3d 709, 713–14 (2014) (internal quotations and citations omitted).

## V. ANALYSIS

Icanovic brings his Petition on the ground that his trial counsel gave insufficient advice regarding the immigration and citizenship consequences of a guilty plea. "The right to counsel in criminal actions brought by the state of Idaho is guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Idaho State Constitution." *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010). "A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act." *Booth v. State*, 151 Idaho 612, 617, 262 P.3d 255, 260 (2011). Such a claim is governed by the *Strickland* test, wherein a defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *McKeeth v. State*, 140 Idaho 847, 850, 103 P.3d 460, 463 (2004); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* standard applies to advice regarding plea bargains as defendants are entitled to "the effective assistance of competent counsel" in considering a plea deal. *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010).

In *Chaidez v. United States*, ___ U.S. ___, 133 S.Ct. 1103 (2013), the United States Supreme Court held that it "announced a new rule in *Padilla*. Under *Teague* [*v. Lane*, 489 U.S. 288 (1989)], defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Id.* at ___, 133 S.Ct. at 1113. The judgment of conviction in Icanovic's case was entered on September 4, 2009. The district court sentenced him to eight years in the custody of the Idaho Board of Correction, with three years fixed and five years indeterminate, and it retained jurisdiction. On February 19, 2010, the district court entered an order suspending Icanovic's sentence and placing him on probation for 10 years. On March 31, 2010, the Supreme Court released *Padilla v. Kentucky*. On April 2, 2010, the time for Icanovic to appeal his judgment of conviction expired, pursuant to the version of Idaho Appellate Rule 14(a) then in effect.[1]

---

[1] The version of Idaho Appellate Rule 14(a) then in effect stated: "In a criminal case, the time to file an appeal is enlarged by the length of time the district court actually retains jurisdiction pursuant to Idaho Code. When the court releases its retained jurisdiction or places the defendant on probation, the time within which to appeal shall commence to run." I.A.R. 14(a) (2007). Under the current version of the rule, *Padilla* would not apply to this case

In this case, the district court came to the correct conclusion regarding whether Icanovic received ineffective assistance of counsel. For the reasons outlined below, the dismissal of Icanovic's petition for post-conviction relief is affirmed.

A defendant alleging ineffective assistance of counsel must show both deficient performance by counsel and prejudice from that deficiency; failing to prove either prong individually or both will defeat a claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687. To establish prejudice resulting from his or her attorney's performance, a defendant must show "that as a result of counsel's deficient performance 'there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial.'" *Ridgley v. State*, 148 Idaho 671, 676, 227 P.3d 925, 930 (2010) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Such a defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla*, 559 U.S. at 372. Icanovic has failed to establish prejudice resulting from his attorney's performance in this case.

In his affidavit associated with his petition for post-conviction relief, Icanovic asserted:

> 6) Prior to entering my plea of guilty, I specifically asked Mr. Martens if my guilty plea and/or conviction would result in me being deported to Bosnia. Mr. Martens advised me that it would not.
> 7) Prior to entering my guilty plea, I specifically asked Mr. Martens if my guilty plea and/or conviction would result in me losing my ability to apply for United States citizenship. Mr. Martens advised me that it would not.
> . . . .
> 12) But for Mr. Martens' advisement, I would not have plead guilty.

On January 19, 2011, there was an evidentiary hearing in the post-conviction proceeding. Icanovic did not testify at that hearing, but Martens did. With respect to Icanovic's assertion that Martens had told him he would not be deported if he pled guilty, Martens testified that such assertion was false. He testified that in his discussions with Icanovic about whether he would be deported, he would have said he did not know. With respect to Icanovic's assertion that Martens stated he would not lose his ability to apply for citizenship, Martens testified that he did not recall any such discussion, but he would not have given advice on that subject because he did not

---

because Icanovic's conviction would have become final prior to the issuance of that opinion. Under the current rule, when a district court enters a judgment of conviction and retains jurisdiction, an appeal challenging the judgment (excluding the sentence) must be brought within forty-two days of the filing of the judgment. I.A.R. 14(a)(2011).

know that area of law. The transcript of Icanovic's guilty plea hearing was also admitted during the first hearing. At the second evidentiary hearing held on June 21, 2013, he testified, but not about his guilty plea. Instead, his prior affidavit was admitted into evidence.

After the second hearing, the district court found that Martens was more credible than Icanovic. The court specifically found that "Mr. Martens did in fact advise Mr. Icanovic that if he chose to plead guilty, it was possible he could be deported and that there could be adverse impacts on his ability to obtain United States citizenship."

The district court took into consideration the entire record and found that Icanovic had failed to meet his burden of establishing prejudice. At the change-of-plea hearing, the district court had Icanovic sworn to tell the truth and then questioned him about his decision to plead guilty. The questioning included:

> Q. Do you understand the nature of the charge against you and the possible penalties that can be imposed as a result of your guilty plea?
> A. Yes.
> Q. Do you understand that there are other consequences to you of a plea of guilty to a felony charge?
> A. Yes.
> Q. Do you understand that if you are not a citizen of the United States that your plea of guilty to a felony or even a misdemeanor may result in deportation, the inability to obtain legal status, or denial of an application for United States citizenship?
> A. Yes.
> . . . .
> Q. Are you pleading guilty just to get it over with even though you believe you are innocent?
> A. No.
> . . . .
> Q. And why did you decide to plead guilty today?
> A. Because I am guilty.
> . . . .
> Q. And has your attorney advised you to your satisfaction of your rights, your defenses, and the possible consequences to you of the guilty plea?
> A. Yes.
> Q. Are you satisfied with your attorney's representation of you in this matter?
> A. Yes.
> . . . .
> Q. Can you tell me then in your own words what you did to be guilty of this offense?
> A. I know that I did domestic battery to my girl and I do know that I plead guilty and I do know that I shouldn't have done that.

Q. And did you in fact strike her; is that correct?
A. What was that?
Q. Did you in fact hit her?
A. I did.
Q. And did you in fact push her to the ground when that occurred?
A. I did.

Icanovic's petition for post-conviction relief was based upon his false assertion that his counsel had told him that he would not be deported and would not lose his ability to apply for citizenship if he pled guilty. The facts, as found by the district court, were that Icanovic was advised by his counsel that if he accepted the plea agreement and pled guilty to the reduced charge, he could possibly be deported and there could be an adverse impact upon his ability to obtain citizenship. With that knowledge, he pled guilty in order to take advantage of the plea bargain.

The district court wrote that Icanovic asserted that "if Mr. Martens had more strongly cautioned him about the possible immigration consequences of entering a plea of guilty to the reduced charge of Domestic Violence, he would have rejected the plea agreement and gone to trial on the original, more serious felony of Attempted Strangulation." That assertion by Icanovic is not supported by the evidence in the record. As stated above, he based his post-conviction petition solely upon the false assertion that he pled guilty because he was advised by his counsel that he would not be deported. He did not state in his affidavit that he would not have pled guilty had his counsel more strongly cautioned him about the possibility of being deported. The district court correctly stated that it did not have to accept Icanovic's assertion. As stated in *Padilla*, "There is no reason to doubt that lower courts—now quite experienced with applying *Strickland*—can effectively and efficiently use its framework to separate specious claims from those with substantial merit." *Id*. at 372. The district court found important that with knowledge that the conviction "could result in his deportation, inability to obtain legal status or denial of an application for United States citizenship, Mr. Icanovic stated under oath that he understood these potential consequences of pleading guilty."

In its opinion, the district court also cited the certainty of conviction based upon factual assertions made in the State's prehearing brief. Those facts were not admitted at the evidentiary hearing. However, Icanovic testified during the change-of-plea hearing that he was pleading

guilty because he was guilty, and he briefly testified as to why he was guilty of the charge, which the district court noted.

The district court concluded, "In short, the Court concludes that even if the petitioner was misadvised under *Padilla*, he suffered no prejudice as a result." That conclusion is supported by evidence in the record. Icanovic is unable to show prejudice from his attorney's advice because the trial court found as a matter of fact that the advice Icanovic complains of did not occur. Because Icanovic is unable to show that he was prejudiced by his attorney's advice, it is unnecessary to address whether that advice was deficient. Icanovic has failed to establish ineffective assistance of counsel.

## VI. CONCLUSION

The dismissal of Icanovic's petition for post-conviction relief is affirmed. Costs on appeal are awarded to the respondent.


Chief Justice J. JONES, Justices ESIMANN, BURDICK and HORTON, CONCUR.