# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 44752

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2018 Opinion No. 16 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 3, 2018 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| ROBERT JOHNSON KINNEY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Richard S. Christensen, District Judge.

Order denying motion to dismiss and judgment of conviction, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Robert Johnson Kinney appeals from his judgment of conviction after a jury found him guilty of sexual battery of a minor. Kinney argues the district court erred when it failed to dismiss the sexual battery charge on proportionality grounds. We affirm the district court's finding that the Idaho's Sex Offender Registration Act does not constitute cruel and unusual punishment, and therefore affirm the district court's order denying Kinney's motion to dismiss and judgment of conviction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Kinney was arrested and charged with felony sexual battery of a minor, Idaho Code § 18-1508A. Kinney filed three motions to dismiss: (1) a motion to dismiss on equal protection grounds; (2) a motion to dismiss on substantive due process grounds; and (3) a motion to dismiss on proportionality grounds. The district court held a hearing on Kinney's three motions. After

1

hearing arguments from both parties, the district court entered a memorandum decision and order which denied all three motions. On appeal, Kinney does not challenge the district court's denial of his motion to dismiss on equal protection grounds or his motion to dismiss on substantive due process grounds. With regard to Kinney's motion to dismiss on proportionality grounds, the district court relied on two sources: (1) the legislative intent within Idaho's Sex Offender Registration Act; and (2) Idaho case law, particularly the Idaho Supreme Court decision in *State v. Joslin*, 145 Idaho 75, 175 P.3d 764 (2007). The district court concluded: "The doctrine of stare decisis leads this Court to hold that Idaho's Sex Offender Registry is remedial rather than punitive. Therefore, Defendant's argument that the State's Sex Offender Registry requirement violates the Eighth Amendment's prohibition on cruel and unusual punishment must fail."

The case proceeded to trial where the jury found Kinney guilty of sexual battery of a minor. Prior to sentencing, Kinney filed a motion to reconsider the motion to dismiss on proportionality grounds. Kinney argued there was a possibility that a motion to dismiss on constitutional grounds is not ripe for adjudication until there is a conviction. Kinney also argued Idaho should adopt the reasoning of *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), an opinion which determined the Michigan sex-offender registry law was unconstitutional.

Before ruling on the motion to reconsider, the district court imposed a unified sentence of seven years, with two years determinate, and retained jurisdiction. After sentencing, the district court conducted a hearing and denied Kinney's motion to reconsider. Kinney timely appeals.

## II.

## STANDARD OF REVIEW

Where the constitutionality of a statute is challenged, we review the district court's decision de novo. *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998); *State v. Martin*, 148 Idaho 31, 34, 218 P.3d 10, 13 (Ct. App. 2009). The party attacking a statute on constitutional grounds bears the burden of proof and must overcome a strong presumption of validity. *State v. Korsen*, 138 Idaho 706, 711, 69 P.3d 126, 131 (2003), *abrogated on other grounds by Evans v. Michigan*, 568 U.S. 313 (2013); *State v. Cook*, 146 Idaho 261, 262, 192 P.3d 1085, 1086 (Ct. App. 2008). Appellate courts are obligated to seek an interpretation of a statute that upholds its constitutionality. *State v. Manzanares*, 152 Idaho 410, 418, 272 P.3d 382, 390 (2012); *Martin*, 148 Idaho at 34, 218 P.3d at 13.

2

## III.

## ANALYSIS

Kinney argues the district court erred when it failed to dismiss the sexual battery charge on proportionality grounds. Kinney argues that while registering pursuant to the original version of Idaho's Sex Offender Registration Act may not have been punishment, changes to the statute have created more onerous and more punitive registration requirements, thus resulting in punishment. Therefore, Kinney asserts that requiring him to register as a sex offender pursuant to Idaho's Sex Offender Registration Act is cruel and unusual punishment in violation of the Idaho Constitution and the United States Constitution.[1] The State asserts that Idaho's Sex Offender Registration Act is not a punishment and is constitutional according to the controlling Idaho case law.

### A.     Idaho's Sex Offender Registration Notification and Community Right-to-Know Act

The Idaho legislature enacted the Sex Offender Registration Notification and Community Right-to-Know Act ("Sexual Offender Registration Act" or "SORA") in 1993. The legislation's Statement of Purpose explained:

> The proposed legislation will require convicted sex offenders to register with local law enforcement in the county of their residence during probation and parole and for a period of ten years after discharge from probation and parole. Registration information would be sent by local law enforcement agencies to the Department of Law Enforcement to create a central statewide sex offender registry. This information will be available to law enforcement agencies. Name of the offender and the criminal conviction information is available to the public upon written request provided they supply the person's name, date of birth and social security number.

S.B. 1002, 52nd Leg., 1st Sess., *Statement of Purpose* (Idaho 1993). The enacted legislation also contained the following explanation of the legislature's findings, which Idaho courts have relied on in interpreting the purpose of SORA:

> The legislature finds that sex offenders present a high risk of reoffense and that efforts of law enforcement agencies to protect their communities, conduct investigations and quickly apprehend offenders who commit sex offenses are impaired by the lack of information available about individuals who have pled guilty to or have been found guilty of sex offenses who live within their

---

[1]     Although Kinney contends that both constitutions were violated, he provides no argument specific to the Idaho Constitution. Kinney also provides no cogent reason why the Idaho Constitution should be applied differently than the United States Constitution in this case. Therefore, this Court will use a federal analysis when considering Kinney's claims.

3

jurisdiction. Therefore, this state's policy is to assist efforts of local law enforcement agencies to protect their communities by requiring sex offenders to register with local law enforcement agencies as provided in this chapter.

I.C. § 18-8302 (1993).

In 1998, as a result of new federal legislation, Idaho repealed its 1993 version of SORA and passed a new Sex Offender Registration Act that conformed to the federal requirements of the 1994 Jacob Wetterling Act[2] and the Megan's Law[3] amendment.[4] I.C. §§ 18-8301 through 18-8326 (1998). The 1998 statement of purpose explained: "This legislation overhauls the sexual offender registry to comply with federal guidelines and to provide easier access by the public to registry information." S.B. 1297, 54th Leg., 2nd Sess., *Statement of Purpose* (Idaho 1998). The findings, found at I.C. § 18-8302, were also updated in 1998:

> The legislature finds that sexual offenders present a significant risk of reoffense and that efforts of law enforcement agencies to protect their communities, conduct investigations and quickly apprehend offenders who commit sexual offenses are impaired by the lack of current information available about individuals who have been convicted of sexual offenses who live within their jurisdiction. The legislature further finds that providing public access to certain information about convicted sexual offenders assists parents in the protection of their children. Such access further provides a means for organizations that work with youth or other vulnerable populations to prevent sexual offenders from threatening those served by the organizations. Finally, public access assists the community in being observant of convicted sexual offenders in order to prevent them from recommitting sexual crimes. Therefore, this state's policy is to assist efforts of local law enforcement agencies to protect communities by requiring sexual offenders to register with local law enforcement agencies and to make certain information about sexual offenders available to the public as provided in this chapter.

---

[2] The federal law compelled states to implement registration laws for sexually violent offenders, sexually violent predators, and offenders who perpetrated certain crimes against children. *See* 42 U.S.C. §§ 14071(a)(1)(A) and 14071(a)(1)(B) (1994).

[3] Megan's Law not only allowed the registration information to be disclosed for "any purpose permitted under the laws of the State," but it required State law enforcement agencies to release relevant information that was necessary to protect the public. 42 U.S.C. § 14071(d) (1996).

[4] In 2006, Congress repealed the Jacob Wetterling Act and the subsequent Megan's Law amendment. Congress replaced the Jacob Wetterling Act and Megan's Law with the Adam Walsh Child Protection and Safety Act of 2006. *See* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248 (2006).

I.C. § 18-8302 (1998).[5]

Idaho's SORA applies to any person who committed one of the statutorily designated crimes in Idaho, as well as any person who entered Idaho after having been convicted of a substantially similar crime in another state. I.C. § 18-8304. Sexual battery of a minor, the crime Kinney is convicted of, is one of the statutorily designated crimes. *See* I.C. § 18-8304.

Idaho's SORA has been amended several times since 1998. Four code sections and their respective amendments are relevant to Kinney's appeal.

### 1. Idaho Code § 18-8309

The 1998 version of I.C. § 18-8309 required an offender to provide written notice if his address or name changed. According to the 1998 version, the offender must provide written notice within five days of the change. In 1999, the time limit to provide notice changed from five days to five working days. The time period of five working days was reduced to two working days in 2006. In 2011, I.C. § 18-8309 was repealed and a new version was added.

The 2011 version of I.C. § 18-8309 imposed four requirements: (1) if an offender changes his name, address, or employment or student status, the offender must appear in person within two working days at the office of the sheriff and notify the sheriff of all changes;[6] (2) an offender must notify Idaho State Police (ISP) of any lodging lasting seven or more days; (3) an offender must notify ISP if there are changes to vehicle information; and (4) an offender must notify ISP of any changes in "designations used for self-identification or routing in Internet communications or postings or telephonic communications."

### 2. Idaho Code § 18-8323

Idaho Code § 18-8323 allows for public access to sex-offender registry information. In 1998, I.C. § 18-8323 allowed ISP or the sheriff to provide public access to information in the sex-offender registry by written request only. In 2001, the Idaho legislature removed the written request requirement from I.C. § 18-8323 and allowed ISP or a sheriff's department to provide public access to the information by means of the Internet. The section was amended in 2011, and ISP or the sheriff is now required to provide public access to sex offender registry

---

[5] Idaho Code § 18-8302 was amended in 2011. The amendment substituted "danger" for "significant risk of reoffense" in the first sentence of the statute.

[6] Idaho Code § 18-8309(1) requires the office of the sheriff to notify ISP of the changed information within three days.

information by means of the Internet. The 2011 version also defines which information must be provided to the public[7] and which information cannot be disclosed to the public.[8]

### 3. Idaho Code § 18-8327

Idaho Code § 18-8327 lists what jobs are prohibited to registered sex offenders. Added in 2004, I.C. § 18-8327 makes it a felony for a registered sex offender to apply for or to accept employment at a day care facility. In addition, an offender is not allowed to be on the premises of a day care center while children are present, other than to drop off or pick up his own children. I.C. § 18-8327. No amendments have occurred since I.C. § 18-8327 was added to Idaho's SORA in 2004.

### 4. Idaho Code § 18-8329

In 2006, I.C. § 18-8329 was added by the Idaho legislature to prohibit offenders' access to school children. The 2006 language of I.C. § 18-8329 made it a misdemeanor for a registered sex offender to: be on the premises of any school when the offender has reason to believe children are present; loiter within 500 feet of a school when children are present; use a school-owned or school-leased vehicle to transport students to or from school; and reside within 500 feet of school property. The statute provided several exceptions: if the offender is a student at the school; if the offender is attending an academic conference or other school event as a parent or legal guardian of a child who is enrolled in the school and participating in the event; if the offender resides at a state licensed facility for incarceration or health care; if the offender is dropping off or picking up a child that he is a parent or guardian of; and if the offender is temporarily on school grounds to make a delivery. I.C. § 18-8329 (2006). A 2008 amendment to I.C. § 18-8329 clarified how to measure the 500-foot distance requirement and added four

---

[7]     Information that shall be made available to the public: the offender's name; the offender's date of birth; the address of each residence at which the offender resides; the address of any place where the offender is a student; a physical description of the offender; the offense for which the offender is registered and any other sex offense for which the offender has been convicted; a current photograph of the offender; and temporary lodging information. I.C. § 18-8323.

[8]      Information that shall not be disclosed to the public: the identity of the victim; the offender's social security number; any reference to arrests of the offender that did not result in a conviction; any Internet identifier associated with the offender; any information pertaining to the offender's passports and immigration documents; and any information identifying any person related to, living with, working for, employing or otherwise associated with the registered sex offender. I.C. § 18-8323.

more exceptions to the rule:  if an offender is voting in a public election; if an offender is taking delivery of his mail through a post office on school grounds; if an offender has permission from the school principal, vice principal, or equivalent; or the offender resides at a homeless shelter or recovery facility that has been approved for sex offenders.  The section was reorganized in 2011, but this amendment did not add any restrictions or exceptions.

In sum, since 2009 the only changes to these relevant sections of Idaho's SORA are: (1) a person must appear in person and within two days to notify the sheriff of changes in personal information; and (2) certain information is now required to be disseminated to the public via Internet.

## B.    SORA Has Withstood Constitutional Challenges

The threshold question in this case is whether Idaho's SORA is punitive in nature.  The United States Constitution and the Idaho Constitution prohibit cruel and unusual punishment. U.S. CONST. amend. VIII; IDAHO CONST. art. I, § 6.  However, Idaho's SORA must first be considered punitive in order to be analyzed under a cruel and unusual constitutional standard.

Kinney asserts that Idaho's SORA is punitive.  Utilizing the five-factor test from *Smith v. Doe*, 538 U.S. 84 (2003),[9] Kinney argues that although Idaho's SORA explicitly articulates a nonpunitive purpose and the Idaho courts have held the purpose of the Act is not punitive, the holdings are manifestly wrong because the effects of Idaho's SORA are punitive.

This is so, explains Kinney, because Idaho's SORA has changed since 1999; the year the Idaho Supreme Court first decided Idaho's SORA was not punitive.  *See Ray v. State*, 133 Idaho 96, 99, 982 P.2d 931, 934 (1999).[10]  To persuade this Court that Idaho's SORA is punitive, Kinney relies on *Does #1-5*.  In *Does #1-5*, the Sixth Circuit incorporated the five factors from *Smith* to determine whether the effects of a Michigan SORA were punitive.  *Does #1-5*, 834 F.3d

---

[9]    *Smith* used the following analysis to determine if legislation is punitive:  whether, in its necessary operation, the regulatory scheme (1) has been regarded in our history and traditions as a punishment; (2) imposes an affirmative disability or restraint; (3) promotes the traditional aims of punishment; (4) has a rational connection to a nonpunitive purpose; or (5) is excessive with respect to this purpose.  *Smith v. Doe*, 538 U.S. 84, 97 (2003).

[10]    *Ray* was overturned on other grounds by *Icanovic v. State*, 159 Idaho 524, 363 P.3d 365 (2015).  The United States Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356 (2010) overruled the holding in *Ray* that the Sixth Amendment contains no implied duty for an attorney to inform his client of collateral consequences of a guilty plea.  *See Padilla*, 559 U.S. at 368; *Ray*, 133 Idaho at 102, 982 P.2d at 937.  *Icanovic* used the holding in *Padilla* with regards to an attorney's duty to inform a client.  *Icanovic*, 159 Idaho at 526, 363 P.3d at 367.

at 701-06.  The Sixth Circuit concluded that because the Michigan SORA acted as a punishment, it was unconstitutional to retroactively apply the 2006 and 2011 amendments made to Michigan's SORA.  *Id.* at 706.

Kinney argues the current Idaho SORA is more similar to the unconstitutional restrictions in Michigan's 2017 SORA than the restrictions from Alaska's 2003 SORA that were ruled constitutional by the United States Supreme Court in *Smith*.  While we acknowledge the Sixth Circuit ruling in *Does #1-5* and notice similarities between Michigan's SORA and Idaho's SORA, the Sixth Circuit holding is not controlling.  Rather, we must look to Idaho case law.

The Idaho Supreme Court has determined that, even in light of the amendments to Idaho's SORA, the Act is not punitive.  The most recent Idaho Supreme Court case on this issue is *State v. Johnson*, 152 Idaho 41, 44, 266 P.3d 1146, 1149 (2011), wherein the Court held the 2009 version of Idaho's SORA was not punitive.  In *Johnson*, the defendant pleaded guilty to sexual abuse of a child under the age of sixteen, which constituted an aggravated offense under the 2009 Idaho SORA and required Johnson to register as a sex offender for the rest of his life.  *Id.* at 42-43, 266 P.3d at 1147-48.  Johnson sought an exemption from his duty to register as a sex offender because he was convicted under the 1998 version of Idaho's SORA, which did not require a lifetime registration.  *Id.* at 43, 266 P.3d at 1148.  When the district court denied Johnson's petition, Johnson appealed to the Idaho Supreme Court and argued Idaho's SORA was an unconstitutional ex post facto law.  *Id.* at 46-47, 266 P.3d at 1151-52.

In analyzing the ex post facto claim, the Idaho Supreme Court articulated the following standard:

> In order to survive an ex post facto challenge, a law must be nonpunitive in purpose and effect.  The reviewing court must first determine whether the Legislature meant for the statute to establish "civil proceedings." If the Legislature dubbed the statute civil but enacted it with the intent to punish, and it would punish with retroactive effect, the law offends the *Ex Post Facto* Clause.  But if "the intention was to enact a regulatory scheme that is civil and nonpunitive, [a reviewing court] must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." The reviewing court should normally defer to the Legislature's stated purpose, so "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."

*Id.* at 44, 266 P.3d at 1149 (internal citations omitted).

The Court relied on previous cases, including *Ray* and *State v. Gragg*, 143 Idaho 74, 137 P.3d 461 (Ct. App. 2005), to conclude that Idaho courts already determined Idaho's SORA was regulatory and non-punitive. *Johnson*, 152 Idaho at 44, 266 P.3d at 1149. After reviewing the *Ray* and *Gragg* opinions, the Supreme Court compared the 1998 version of Idaho's SORA to the 2011 version of SORA and concluded:

> SORA has changed little since this Court considered it in *Ray* and since the Court of Appeals considered it in *Gragg*. The presently codified SORA findings in I.C. § 18-8302 are nearly identical to the version we evaluated in *Ray*. This Court has thus already concluded that SORA is regulatory in purpose. Furthermore, the Court of Appeals' analysis in *Gragg* aptly demonstrated that SORA, generally, is nonpunitive in effect.

*Johnson*, 152 Idaho at 45, 266 P.3d at 1150 (internal citations omitted).

The ultimate question in *Johnson* was whether the 2009 amendment requiring lifetime registration for aggravated offenses changed the nature of the Act from regulatory to punitive. The Supreme Court held that because the 2009 changes were "technical amendments and updates," there was no reason to believe the legislature intended the amendments to be anything other than civil and nonpunitive. The Court noted that the appropriate test was whether the challenged statute is, "by the clearest proof, so punitive as to override the Legislature's regulatory purpose." Applying that standard, the Supreme Court rejected Johnson's argument that because the 2009 amendments would require him to register for life and for which there was no exemption for that requirement, Idaho's SORA registration requirements were punitive. The Court concluded: "The fact that a sexual offender, convicted of a certain class of crime, may be required to register for life is not so punitive that it overrides SORA's regulatory purpose." *Id.* at 46, 266 P.3d at 1151.

In 2007, the Idaho Supreme Court ruled Idaho's SORA did not violate the Eighth Amendment's prohibition on cruel and unusual punishment. *State v. Joslin*, 145 Idaho 75, 86, 175 P.3d 764, 775 (2007). Unlike *Smith*, *Gragg*, and *Johnson*, the constitutional challenge in *Joslin* did not involve an alleged ex post facto violation. *Joslin*, 145 Idaho at 85-86, 175 P.3d 774-75. Instead, Joslin argued the sex-offender registration under Idaho's SORA constituted cruel and unusual punishment in violation of the Constitutions of Idaho and the United States. *Id.* at 86, 175 P.3d at 775. The *Joslin* analysis focused on three specific provisions of Idaho's SORA. First, *Joslin* cited I.C. § 18-8307 (2007) which required offenders to register with the sheriff or the county of residence within a specified time of arriving in the county, and annually

9

thereafter. *Joslin*, 145 Idaho at 85-86, 175 P.3d 774-75. Second, *Joslin* cited I.C. § 18-8304(1) (2007) which required registration for statutory rape, and thus, the district court ordered Joslin to register as a sex offender. *Joslin*, 145 Idaho at 86, 175 P.3d at 775. Third, *Joslin* described how the registration requirement extends for life unless the offender successfully petitions the court under I.C. § 18-8310 (2007) to be relieved of the requirement. *Joslin*, 145 Idaho at 86, 175 P.3d at 775.

The Idaho Supreme Court determined the sex offender-registration requirement does not constitute cruel and unusual punishment. *Id.* Citing to *Ray*, the Idaho Supreme Court ruled that the requirement for sex offenders to register does not impose punishment. *Joslin*, 145 Idaho at 86, 175 P.3d at 775. The Court further held that the purpose of Idaho's SORA is not punitive, but rather, it "provides an essential regulatory purpose that assists law enforcement and parents in protecting children and communities." *Joslin*, 145 Idaho at 86, 175 P.3d at 775 (quoting *Ray*, 133 Idaho at 101, 982 P.2d at 936). Because of the purpose of Idaho's SORA, the *Joslin* Court concluded:

> Therefore, [the registration requirement of SORA] cannot constitute the infliction of cruel and unusual punishment under our State Constitution. Since it is not punishment under Idaho law, it would not constitute the infliction of punishment under the Constitution of the United States. *See*, *Smith v. Doe*, 538 U.S. 84 (2003).

*Joslin*, 145 Idaho at 86, 175 P.3d at 775.

Idaho precedent is controlling in this case. Stare decisis dictates that we follow controlling precedent, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overturning it is necessary to vindicate plain, obvious principles of law and remedy continued injustice. *State v. Bradshaw*, 155 Idaho 437, 439, 313 P.3d 765, 767 (Ct. App. 2013). Here, insofar as Kinney argues Idaho's SORA constitutes cruel and unusual punishment, the holdings from *Joslin* and *Johnson* are controlling.[11] We are not persuaded that the holding in

---

[11] While *Joslin* clearly concluded the registration requirement of Idaho's SORA was not cruel and unusual punishment, the *Joslin* Court reviewed only one particular element of Idaho's SORA and did not undertake a comprehensive review of the Act as a whole. *See State v. Joslin*, 145 Idaho 75, 175 P.3d 764 (2007). Instead of considering Idaho's SORA under the five-factor test articulated in *Smith*, the Idaho Supreme Court in *Joslin* relied on the holding from *Ray*, which determined the purpose of Idaho's SORA was not punitive without addressing the changes to Idaho's Sex Offender Registration Act since 1999, when *Ray* was decided. *Joslin*, 145 Idaho at 86, 175 P.3d at 775.

*Joslin* or *Johnson* is manifestly wrong even though some sections of Idaho's SORA have changed since the Idaho Supreme Court issued its rulings in *Joslin* and *Johnson*.[12]

For example, since *Johnson* was decided, the only changes to Idaho's SORA are (1) a person must appear in person within two days to notify the sheriff of changes in information, and (2) certain information is now required to be disseminated to the public. These two changes do not tip the scales and change the statute from nonpunitive to punitive. We therefore follow the Supreme Court decisions regarding the purpose and effects of Idaho's Sex Offender Registration Act, such that the purpose and effects are not punitive.

The final question is, as in *Johnson*, whether the challenged sections of Idaho's SORA are an exception to the general understanding that Idaho's SORA is not punitive. *Johnson*, 152 Idaho at 45, 266 P.3d at 1150. The test we apply is whether the challenged sections are by the clearest proof so punitive as to override the legislature's regulatory purpose. *Id.* at 44, 255 P.3d at 1149. We are not persuaded by Kinney's arguments on appeal. Kinney relies on *Does #1-5* and the Sixth Circuit's evaluation of the Sex Offender Registration Act in Michigan. However, we cannot rely on the Sixth Circuit analysis of a Michigan statute. For example, although Kinney points to the housing restrictions under Idaho's SORA and compares them to the housing restrictions in the Michigan SORA, we cannot reach the same conclusion on this element of the Act as did the Sixth Circuit. The Sixth Circuit had evidence in the record regarding demographic and geographic information that was specific to Michigan. *Does #1-5*, 834 F.3d at 701-02. No comparable Idaho evidence exists in the record in Kinney's case.

Kinney invites us to adopt the research and findings of the Supreme Court, as we did with the New Jersey Court on eyewitness identification in *State v. Almaraz*, 154 Idaho 584, 301 P.3d 242 (2013).[13] However, the evidence before the Sixth Circuit, at least on the housing issue,

_____

Similarly, the *Johnson* Court did not utilize the five-factor test from *Smith* in its ruling. *See State v. Johnson*, 152 Idaho 41, 266 P.3d 1146 (2011). Instead, *Johnson* relied on *Ray* and *Gragg* for its holding. *Johnson*, 152 Idaho at 44, 266 P.3d at 1149.

12    To the extent Kinney asks this Court to overrule Idaho Supreme Court precedent, we are without authority to do so. To the extent we are asked to review the effect of changes in the law, we have done so and conclude that those changes do not affect the underpinnings of prior binding precedent.

13    In *State v. Almaraz*, 154 Idaho 584, 301 P.3d 242 (2013), the Idaho Supreme Court cites to *State v. Henderson*, 27 A.3d 872 (2011). The *Henderson* opinion provides an extensive

related specifically to Michigan's geography and demography. As such, this population data cannot be adopted for use in Idaho. As to the other research and findings, while it may be persuasive, we decline to adopt the research and conclusions in light of contrary controlling precedent here in Idaho.

We also cannot ignore recent holdings from this Court that declared the effects of sex-offender registration in Idaho are not so punitive as to override the legislature's intent to create a civil, regulatory scheme. *See Knox v. State*, 162 Idaho 729, 404 P.3d 1280 (Ct. App. 2017) and *Groves v. State*, 156 Idaho 552, 328 P.3d 532 (Ct. App. 2014). Kinney has failed to prove that the current version of Idaho's SORA constitutes an exception to the Idaho case law which determined Idaho's SORA is not punitive. Thus, because we are constrained to hold that Idaho's SORA is not punitive in nature or effect, the district court was correct in deciding that Idaho's SORA does not constitute cruel and unusual punishment.

**IV.**

**CONCLUSION**

Because the district court properly determined Idaho's SORA does not constitute cruel and unusual punishment, we affirm the district court's order denying Kinney's motion to dismiss and judgment of conviction.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR**.

---

discussion of the science on eyewitness identification. *Id.* at 885-89. The Idaho Supreme Court adopted the *Henderson* court's rationale and conclusion regarding that science. *Almaraz*, 154 Idaho at 593-94, 301 P.3d at 251-52.